**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064

TELEPHONE (212) 373-3000

FACSIMILE (212) 757-3990

JOHN F. BAUGHMAN

TELEPHONE (212) 373-3021
FACSIMILE (212) 492-0021
E-MAIL: jbaughman@paulweiss.com

1615 L STREET, NW
WASHINGTON, DC 20036-5694
TELEPHONE (202) 223-7300
FACSIMILE (202) 223-7420

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101
FACSIMILE (81-3) 3597-8120

UNIT 3601, FORTUNE PLAZA OFFICE TOWER A
NO. 7 DONG SANHUAN ZHONGLU
CHAO YANG DISTRICT
BEIJING 100020
PEOPLE'S REPUBLIC OF CHINA
TELEPHONE (86-10) 5828-6300
FACSIMILE (86-10) 6530-9070/9080

12TH FLOOR, HONG KONG CLUB BUILDING
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2536-9933
FACSIMILE (852) 2536-9622

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, U.K.
TELEPHONE (44 20) 7367 1600
FACSIMILE (44 20) 7367 1650

October 21, 2009

**By Hand**

The Honorable Victor Marrero
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2-17-10

   *Terra Securities ASA Konkursbo, et al. v. Citigroup Inc., et al.*, No. 09 Civ. 7058

Dear Judge Marrero:

   As instructed by the Court, Defendants respectfully submit this reply in further support of their deemed motion to dismiss the Complaint on the grounds of *forum non conveniens* and lack of subject matter jurisdiction.[1] The purchase of foreign securities abroad by these Norwegian plaintiffs lacks a nexus to the United States sufficient to support jurisdiction in this Court.

**A.   Background**

   All Plaintiffs are Norwegian. The "Municipalities" purchased "Fund-Linked Notes" ("FLNs") through their broker, Terra. The FLNs were arranged by non-party Citigroup Global Markets Limited ("Citi-London"), an English company. (Arnold Dec. ¶¶ 1, 3-10.) The FLNs were issued by French and Irish companies and were listed exclusively on the Irish Stock Exchange. (*Id.* ¶ 12.) The prospectuses state: "The Notes have not been and will not be registered under the U.S. Securities Act of 1933" and, subject to exceptions inapplicable here, the "Notes may not be offered, sold or delivered within the United States or to U.S. persons." (Wood Dec. Exs. 1 & 2 at 2.) The value of the FLNs was linked in part to the performance of a Cayman fund, the Citi TOB Fund, but Plaintiffs intentionally did not invest in that fund because it is dollar denominated and they expressly wanted investments denominated in Norwegian kroner. (Arnold Dec. ¶ 12.)

---

[1]   Defendants also submit the accompanying declarations of Peter Arnold ("Arnold Dec."), Stephen Moriarty ("Moriarty Dec."), Finn Myhre ("Myhre Dec."), and Alastair Wood ("Wood Dec.").

As Citi's lead "transactors," Peter Arnold and Hans Jacob Hafsteen were responsible for the vast majority of Citi's dealings with Terra. (*Id.* ¶ 7.) At the relevant time, both men worked for Citi-London and specialized in arranging structured products for parties in the Nordic region. (*Id.* ¶ 4.) On these transactions, Messrs. Arnold and Hafsteen, along with other colleagues on the "sales" team, worked closely with a "structuring" team that also was based in London. All of the Terra employees with whom they interacted were Norwegian, and the overwhelming majority of communications between Citi and Terra took place either in London or Norway. (*Id.* ¶¶ 7-9.) All of the operative transaction documents were prepared and negotiated in London. (*Id.* ¶¶ 8-9.) These and other records relating to the transactions continue to be located in London. (*Id.* ¶ 9.)

Messrs. Arnold and Hafsteen also were responsible for assembling and distributing materials concerning the FLNs, including the "Presentation" described in the Complaint. (*Id.* ¶ 10.) The Presentation provides general background material and was not prepared specifically for Plaintiffs. (*Id.*) It states expressly that it is not "an offer, invitation or solicitation for any investment product in any jurisdiction." (Wood Dec. Ex. 5 at 23.)

Terra acted as a broker for the FLNs pursuant to Distribution Agreements with Citi-London—which are explicitly governed by U.K. law—in which Terra states specifically that it is "*not relying*" on [Citi-London] nor on any of its affiliates for information, advice or recommendations of any sort except for [specific information in a term sheet]." (*Id.* Exs. 3 & 4 at 2, 3 (emphasis added).) Terra also warrants in the Distribution Agreements that "it is experienced in distributing structured products and understands the risks inherent in them" and that it would review and provide copies of the relevant prospectuses to every potential purchaser of the FLNs "prior to their commitment to purchase a Product." (*Id.* at 5.) Notably, the Complaint does not allege any misstatement or omission in any of the term sheets, prospectuses, or other transaction or offering documents.

Importantly, Citi had *no communications* with anyone at any of the Municipalities concerning their decisions to invest in FLNs. (Arnold Dec. ¶ 11.) Citi representatives dealt only with Terra (*id.*), and the Complaint does not allege any statements made by anyone at any Citi entity to anyone acting for any of the seven Municipalities.

B.   **The Complaint Should Be Dismissed on Grounds of *Forum Non Conveniens***

All of the prerequisites to *forum non conveniens* dismissal are met here. Notably, Plaintiffs do not dispute most of them.

<u>Plaintiffs' Choice of Forum Is Entitled to Minimal Deference</u>: There is no dispute that Plaintiffs are foreigners with no connection to New York and, therefore, their choice of forum is entitled to the lowest level of deference. *See Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 71 (2d Cir. 2003).

<u>Plaintiffs' Acknowledged Forum Shopping</u>: The Court must consider the extensive and undisputed evidence of Plaintiffs' deliberate forum shopping. *See, e.g., Do Rosário Veiga v. World Meteorological Org.*, 486 F. Supp. 2d 297, 302 (S.D.N.Y. 2007). Terra's administrator, Jon E. Skjørshammer, has stated that Plaintiffs filed suit in the United States because "American law is very plaintiff-friendly." (Wood Dec. Ex. 8.) Mr. Skjørshammer provided this explanation after Plaintiffs retained English counsel to consider filing suit in England, but then elected to file

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
The Honorable Victor Marrero                                                                3

suit in the United States because: (1) Plaintiffs were advised that English law was unfavorable, and (2) Plaintiffs wanted to take advantage of the United States legal system, which permits them to (a) hire lawyers on a contingent fee basis—arrangements considered unethical in England and Norway—and (b) avoid paying Defendants' costs in the event of an unfavorable outcome, which is a risk in the English and Norwegian legal systems. (*See* Wood Dec. Exs. 8-10; Myhre Dec. ¶ 17; Moriarty Dec. ¶¶ 22-25.) This is the *sine qua non* of forum shopping.

An Available and Adequate Alternate Forum Exists: Defendants have identified *two* appropriate alternate fora: Norway and England. Plaintiffs do not dispute that Norway is an appropriate alternate forum; nor could they. Norwegian courts recognize claims for fraud, provide due process, will exercise jurisdiction over the parties and *already have* handled other cases relating to Terra's collapse. (Myhre Dec. ¶¶ 7-12, 14-16, 23.)

Plaintiffs contend that the English courts are unsuitable on two grounds. As explained in the accompanying declaration of Stephen Moriarty, QC, Plaintiffs are wrong on both points. First, it is incorrect that Regulation 3 of the Financial Services and Markets Act 2000 would bar the Municipalities from bringing suit in England. That regulation only restricts suits relating to specific statutory offenses, none of which is implicated here. (Moriarty Dec. ¶ 7.) Second, it also is incorrect that an English court would dismiss a suit by Plaintiffs on the grounds of *forum non conveniens* where, as here, Defendants will *consent* to jurisdiction. (*Id.* ¶¶ 11-13.) The courts of England are an available and adequate alternate forum, as United States courts routinely recognize. *See, e.g., Pollux Holding Ltd.*, 329 F.3d at 75.

The Private Factors Favor Dismissal: The *Gulf Oil* private factors all favor dismissal. Most significant, the majority of key documents and witnesses are overseas. Plaintiffs do not dispute that the vast majority of contacts between the parties occurred in Europe. Knut Anders Opstad, one of the principal negotiators for Terra in the transactions, states that his "*primary contacts* were Peter Arnold and Hans Jacob Hafsteen of Citigroup London." (Opstad Aff. ¶ 2 (emphasis added).) Mr. Arnold agrees that he and Mr. Hafsteen were the principal Citi transactors and that the vast majority of communications between Citi and Terra took place in London and Norway. (Arnold Dec. ¶¶ 7-9.) The records relating to these communications are in London. (*Id.* ¶ 9.)

Plaintiffs have submitted various emails among Terra and Citi employees. Almost all were sent or received by Citi-London employees,[2] and they confirm that the deal was negotiated between London and Norway.[3] Indeed, in at least one instance, it appears that Plaintiffs have attempted to obscure the role of Citi-London. One of the exhibits to Mr. Skjørshammer's declaration includes a duplicate copy of the Presentation, but *omits* other materials attached to

---

[2] The few exceptions concern irrelevant "back office" matters, such as settlements. (Arnold Dec. ¶ 13.) The documents identify numerous Terra employees and potential witnesses based in Norway, including Harald Nordberg, Knut Anders Opstad, Erik Nordang Svein, Torkil Lehn, and Vivi Birkernes Engebretsen.

[3] Plaintiffs' citation to an agenda for a meeting in New York, purportedly as a basis for this Court to retain jurisdiction (Pl. Ltr. at 3; Skjørshammer Dec. Ex. L), actually demonstrates the lack of substantive connection between Plaintiffs' investment in the FLNs and this forum. The meeting, a general meeting not specifically about the FLNs, was scheduled for September 11, 2007—months *after* Plaintiffs purchased the FLNs—and Plaintiffs offer no evidence that most of the listed attendees had anything to do with the purchase or sale of the FLNs.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
The Honorable Victor Marrero                                                                 4

the original email, such as drafts of the Distribution Agreement and a term sheet explicitly stating that Terra is dealing with Citi-London, not any entity in New York. (Arnold Dec. ¶ 14.)

As to the Municipalities, as noted, there is no Citi connection. Plaintiffs cannot identify any communications between the Municipalities and any Citi representative, let alone one touching New York. Plaintiffs thus fall far short of establishing the requisite connection between "material events" and the forum. *See Do Rosário Veiga,* 486 F. Supp. 2d at 302.

The Public Factors Favor Dismissal: Plaintiffs essentially concede that the public factors favor dismissal. English and Norwegian courts are both less congested than the courts in this District; the average time to resolve a case in Norway is six months.[4] This case is a matter of intense public interest in Norway. After Terra collapsed, the Norwegian Financial Supervisory Authority did an investigation and sought to revoke Terra's license. (Myhre Dec. Ex. 4.) Similarly, the Norwegian Bankruptcy Court appointed an administrator and directed him to conduct an investigation. The Terra bankruptcy has been the subject of extensive media coverage in Norway. (Myhre Dec. ¶ 21.) There have been no comparable events in this country.

Plaintiffs identify only one public interest factor supposedly in favor of jurisdiction in this Court: allegedly "culpable" conduct took place in New York and United States courts "have an interest in enforcing" the federal securities laws. (Pl. Ltr. at 5.) But this argument presupposes that the United States securities laws are applicable here. They are not because this is a "foreign-cubed" case involving *foreign* purchasers of *foreign* securities that were traded on a *foreign* exchange. *See Morrison v. Nat'l Austl. Bank Ltd.,* 547 F.3d 167, 172 (2d Cir. 2008).

C.  **The Complaint Should Be Dismissed for Lack of Subject Matter Jurisdiction**

Plaintiffs concede that there was no "effect" in the United States that would support subject matter jurisdiction. Instead, Plaintiffs rely entirely on the "conduct" test. *See Morrison,* 547 F.3d at 171 (summarizing "effects" and "conduct" tests). Plaintiffs, however, have not met their burden of affirmatively demonstrating the existence of subject matter jurisdiction.

*First:* As Plaintiffs concede, a critical factor is whether the Complaint adequately pleads a violation of the United States securities laws. (Pl. Ltr. at 6.) Plaintiffs, however, make no effort to demonstrate that they have pleaded an actionable securities claim. This is hardly surprising, as the Complaint contains multiple fatal and fundamental defects.[5] To list just a few:

- Terra does not have standing to assert any claims under the Exchange Act or Rule 10b-5 because it has not alleged that it is a purchaser or seller of a security. *See Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 749 (1975). Plaintiffs' own submission demonstrates that this defect is incurable. Mr. Opstad, a former Terra employee, admits that his firm was only a "broker" with respect to the FLNs. (Opstad Aff. ¶ 1.)

---

[4]   In 2008, over 12,000 civil cases were filed in this District. *See* http://www.uscourts.gov/caseloadstatistics.html. The numbers filed in Norwegian and English courts were far less. (Myhre Dec. ¶ 19 & Ex. 2; Moriarty Dec. ¶ 16.) Further, the average processing time for cases in the Oslo court was six months. (Myhre Dec. ¶ 19.)

[5]   As the Court directed, Defendants have written to Plaintiffs explaining the many flaws in the Complaint and asking that it be withdrawn. (Wood Dec. Ex. 11.) If it is not, Defendants intend to file a 12(b)(6) motion.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

The Honorable Victor Marrero                                                                 5

- Terra cannot demonstrate reliance; it disclaimed reliance in the Distribution Agreements. The Municipalities have not alleged individual reliance on any statement by any Defendant, as they must here, where the fraud-on-the-market presumption is inapplicable. *See In re Citigroup Auction Rate Sec. Litig.*, 2009 WL 2914370, at *7 (S.D.N.Y. 2009) (presumption unavailable if plaintiff does not plead an efficient market).

- Every alleged misstatement or omission was accurately and fully addressed in the prospectuses and other materials provided to Plaintiffs and, therefore, none can support a claim. *See Olkey v. Hyperion 1999 Term Trust, Inc.*, 98 F.3d 2, 9 (2d Cir. 1996).

*Second:* Subject matter jurisdiction exists only if United States-based conduct "directly caused losses to investors abroad." *Morrison*, 547 F.3d at 171. This is similar to the standard for pleading loss causation set forth in *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342-46 (2005). A plaintiff must allege that "the subject of the fraudulent statement or omission was the cause of the actual loss suffered." *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 568 F. Supp. 2d 349, 359 (S.D.N.Y. 2008). Plaintiffs cannot meet this requirement under any circumstances, let alone on the basis of alleged conduct in the United States. The alleged fraud involves a supposedly erroneous chart illustrating the historic correlation between municipal bond rates and LIBOR. (*See* Cmplt. ¶¶ 35-39.) But even if the chart were wrong, Plaintiffs have not alleged that disclosure of the supposed misinformation led to their loss. Nor could they, since any loss resulted from a general market downturn. The lack of any causal link is fatal to Plaintiffs' claim because *Dura* and its progeny require that a plaintiff's loss result *directly from disclosure of the defendant's lie*. *See Leykin v. AT&T Corp.*, 423 F. Supp. 2d 229, 239 (S.D.N.Y. 2006) (Loss causation is concerned with "whether it was the concealed or misrepresented fact which caused the harm."). Plaintiffs make no such allegation.

*Third:* At most, the Complaint alleges a few misleading statements in preliminary marketing materials. The law is clear that statements in such "preparatory" materials are insufficient to establish subject matter jurisdiction where, as here, a foreign plaintiff purchased a foreign security abroad. *Bersch v. Drexel Firestone, Inc.* 519 F.2d 974, 987 (2d Cir. 1975). In assessing jurisdiction, the Court is required to look at the "essential core" of the alleged fraud. *Cornwell v. Credit Suisse Group*, 2009 WL 3241404, at *9 (S.D.N.Y. 2009). Here, the "essential core" is that seven Norwegian Municipalities, which never had any communications with anyone in the United States, purchased securities through their Norwegian broker Terra, based on offering documents that are not alleged to have any connection to the United States or to contain any false statements. When the securities—which could not be sold in the United States—lost value, Plaintiffs suffered losses *in Norway*. This undisputed set of facts provides no basis for jurisdiction under the United States securities laws.

For these, and the reasons in our initial letter, the Complaint should be dismissed.

SO ORDERED: The Clerk of Court is directed to enter into the public record of this action the letter above from defendants herein.

2-16-10

[signature] VICTOR MARRERO, U.S.D.J.

Respectfully submitted,

[signature]

John F. Baughman

cc:   Michael M. Fay, Esq. (by hand) (counsel for Plaintiffs)