KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

1633 BROADWAY

NEW YORK, NEW YORK 10019-6799

212-506-1700

FACSIMILE: 212-506-1800

MICHAEL M. FAY
212-506-1706

ATLANTA
HOUSTON
NEWARK
SAN FRANCISCO

October 14, 2009

**_VIA HAND DELIVERY_**

The Honorable Victor Marrero
United States District Court for the
  Southern District of New York
United States Courthouse
500 Pearl Street, Suite 660
New York, New York  10007

> Re:   *Terra Securities ASA Konkursbo, et al. v. Citigroup, Inc., et al.,*
>        No. 09 Civ. 7058 (S.D.N.Y.) (VM)

Dear Judge Marrero:

We represent Plaintiffs[1] in the above-referenced action.  We write in response to the letter brief, dated October 7, 2009 (the "Letter"), submitted by Citigroup on its motion to dismiss this securities fraud action on *forum non conveniens* and subject matter jurisdictional grounds.[2]

As Plaintiffs alleged in their Complaint, this case arises out of Citigroup's sale of securities to Terra and the Municipalities based on express misrepresentations that were prepared here in New York.  As a result of Plaintiffs' reliance on those misrepresentations, and their ultimate purchase of the securities, Plaintiffs incurred over $200 million in losses.

These allegations, and the evidence submitted herewith, demonstrate that Citigroup's motion is baseless.  First, this action is critically connected to New York because the securities at issue here, the FLNs, were linked to a United States municipal bond fund managed by a team of Citigroup's New York employees – a fact Citigroup does not deny.  Second, as Citigroup also does not deny, the primary alleged misrepresentations here were prepared in New York by that same management team.  Third, Citigroup's New York office sent numerous communications to

---

[1] Capitalized terms used herein are the same as those used in the Plaintiffs' complaint ("Complaint").

[2] In an Endorsed Order dated October 8, 2009, the Court deemed the Letter to be Citigroup's motion. Plaintiffs submit herewith the Declarations of Jon E. Skjørshammer ("Skjørshammer Decl.") and Felicity Toube ("Toube Decl.") and the Affidavit of Knut Anders Opstad ("Opstad Aff.") in opposition to the motion.  This Court may consider these sworn statements in determining questions of *forum non conveniens* and subject matter jurisdiction. *Transunion Corp. v. PepsiCo, Inc.,* 811 F.2d 127, 130 (2d Cir. 1987); *In re Alstom SA Sec. Litig.,* 406 F. Supp. 2d 346, 366 (S.D.N.Y. 2005) (Marrero, J.).

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

Plaintiffs regarding the Fund and municipal bond investments, including information sent after the FLNs had begun to fail which demonstrated the disturbing volatility of the Citi TOB Fund.

Unable to refute these facts, Citigroup points to mere incidentals, including the involvement of its London affiliate, CGM London, where the entities that issued the FLNs are incorporated (France, Ireland) and where the Citi TOB Fund is listed (Ireland). However, Citigroup has failed to present any evidence even suggesting that CGM London acted as anything more than an agent for CGM New York and CAI, or any evidence that where the Notes' issuers are incorporated or where the Fund is listed has any material relevance to this securities fraud action. Instead, the evidence before this Court irrefutably demonstrates that: (a) the FLNs, irrespective of where they were issued, were, for all practical purposes, an investment by the Municipalities in a New York-managed Citigroup fund, and (b) the alleged misrepresentations that induced the Municipalities' investment were made by Citigroup's New York-based managers.

Accordingly, it is clear that New York is the most appropriate forum for this action, and that this Court has subject matter jurisdiction over Plaintiffs' securities fraud claims. Citigroup's motion should be denied.

I.    **Facts**

In 2007, the Municipalities purchased the FLNs, which were linked to the Citi TOB Fund, a Cayman Island fund managed by CAI, a unit of CGM New York. (Skjørshammer Decl. Exh. D at 16 and Exh. Q) In fact, in its internet promotional materials, CAI trumpets its expertise in municipal bond investments. (*Id.* Exh. R)

Further, the marketing materials provided to Terra and the Municipalities regarding the Citi TOB Fund expressly stated that the group managing the Citi TOB Fund was located in New York. Specifically, a PowerPoint presentation (the "Presentation") which, among other documents, contained the principal misrepresentations alleged in the Complaint, states that Craig Henick ("Henick") and Edward Sun, both New York employees of CGM New York or CAI, were the managers of the Citi TOB Fund. (Skjørshammer Decl. ¶ 7 and Exh. D at 5; *see also id.* Exh. C; Cmplt. ¶¶ 30-46) The Presentation also states that the Fund would be managed by a "[h]ighly experienced team spinning out of Citigroup's proprietary municipal bond trading desk" located in New York. (Skjørshammer Decl. Exh. D at 4 and Exh. R at 1)[3]

Mr. Knut Anders Opstad, a former Terra employee involved with the Municipalities' FLN investments, has confirmed his understanding that the marketing materials related to the Citi TOB Fund originated in New York. Mr. Opstad has also confirmed that CGM New York or CAI employees, including Henick, were the managers of the Fund and responded to Terra's inquiries when the FLNs' performance deteriorated in the fall of 2007. (Opstad Decl. ¶¶ 1-4)

---

[3] Citigroup's only response is that the Presentation was "communicated" to Terra by a Netherlands affiliate. (Letter at 2) However, the reference to that affiliate is buried in fine print on page 2 of the Presentation, while that same page, and every other page of the Presentations, bears the much larger logo of "Citigroup Alternative Investments," *i.e.*, one of the defendants in this action. (Skjørshammer Decl. Exh. D)

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

In addition, the administrator of Terra, Jon E. Skjørshammer, as part of the investigation he conducted after Terra's bankruptcy, has identified numerous communications which demonstrate that CGM New York and CAI provided substantive information regarding municipal bonds and the Citi TOB Fund to Terra for dissemination to the Municipalities. (Skjørshammer Decl. ¶¶ 4-19 and Exhs. A-P)  In addition, these communications establish that after the FLNs had begun to fail in the fall of 2007, Henick provided the data cited in the Complaint which demonstrated the significant volatility in the Citi TOB Fund (*id.* Exh. M; *see also* Cmplt. ¶ 41) – volatility that had been concealed from Terra and the Municipalities prior to their purchase of the FLNs.  In all of these communications, CGM London employees were involved solely as intermediaries, passing information between Citigroup's New York offices and Terra.

As for alternative forums, Felicity Toube, an English barrister retained by Plaintiffs, has opined that transfer of this action to England would only result in another *forum non conveniens* determination.  And, given that, among other things:  (a) all parties are located outside of England, (b) the alleged misrepresentations are based on information prepared in New York, (c) those misrepresentations were ultimately communicated in Norway, and (d) the Notes in dispute are linked to a New York-managed fund, it is unlikely that an English court would find that England is an appropriate forum for the adjudication of this action.  (Toube Decl. ¶¶ 5, 7)

## II.   *Forum Non Conveniens*

Dismissal of an action for *forum non conveniens* "is a discretionary device" employed by courts only in "rare instances." *Metito (Overseas) Ltd. v. Gen'l Elec. Co.*, 2006 U.S. Dist. LEXIS 81683, at *4 (S.D.N.Y. Nov. 7, 2006).  In determining whether a case should be dismissed on *forum non conveniens* grounds, a court:  (a) considers the degree of deference that should be afforded the plaintiff's choice of forum; (b) determines whether the defendant has demonstrated that an adequate alternative forum exists; and (c) weighs the private and public interests of the parties, to determine, based on "the relative hardships involved, whether the case should be adjudicated in the plaintiff's chosen forum or in the alternative forum suggested by the defendant." *Pollux Holding, Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 70 (2d Cir. 2003).  In order to prevail, a defendant must demonstrate, at a minimum, that plaintiffs' "chosen forum is . . . genuinely inconvenient and the [alternative] forum significantly preferable." *Bigio v. Coca-Cola Co.*, 448 F.3d 176, 179 (2d Cir. 2006) (citation and quotations omitted).

*Deference to Plaintiffs:* "[A] plaintiff's choice of forum is presumptively entitled to substantial deference." *Gross v. British Broad. Corp.*, 386 F.3d 224, 230 (2d Cir. 2004); *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981).  Although that deference is tempered somewhat when plaintiffs choose a forum other than their own, "any plaintiff's selection of a forum is entitled to deference . . . ." *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 101 (2d Cir. 2000).  Indeed, even where "the degree of deference is reduced" because plaintiffs choose a forum other than their own, an action will be dismissed on FNC grounds only when plaintiffs choose a "genuinely inconvenient" forum. *Bigio, supra,* 448 F.3d at 179.

Citigroup has offered no argument, and certainly no supporting evidence, even suggesting that this Court is a "genuinely inconvenient" forum (particularly given that Citigroup is located here).  Instead, Citigroup attempts to avoid its burden by arguing in conclusory fashion

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

that Plaintiffs are "forum shopping," focusing principally on the fact that Plaintiffs have a partial contingency fee arrangement with their attorneys.  However, this Court has rejected accusations of forum-shopping where, as here, plaintiffs file suit in a forum in which "most of the actions" material to the dispute occurred.  *See, e.g., Cyberscan Tech., Inc. v. Sema Ltd., ("Cyberscan"),* 2006 U.S. Dist. LEXIS 90375, at *23 (S.D.N.Y. Dec. 13, 2006).  Further, this Court's interest in enforcing U.S. securities laws violated by U.S. citizens is an additional "*bona fide*" reason for bringing suit in the United States.  *See, e.g., DiRienzo v. Philip Servs. Corp.,* 294 F.3d 21, 28 (2d Cir. 2002) ("[P]laintiffs offered a quite valid reason for litigating in federal court:  this country's interest in having United States courts enforce United States securities laws").[4]

*Adequate Alternative Forum:*  Citigroup has also failed to offer any evidence that England or Norway are adequate alternative forums.  An alternative forum is "adequate" if the defendants are amenable to service there and an adequate remedy is available to plaintiffs.  *do Rosario Veiga v. World Meteorological Org.,* 486 F. Supp. 2d 297, 301-302 (S.D.N.Y. 2007) (Marrero, J.).  "The moving party has the burden of showing that an adequate alternative forum exists," *Cyberscan, supra,* 2006 U.S. Dist. LEXIS 90375, at *24, and if the movant fails to make this showing, "the inquiry ends, and the motion to dismiss is denied." *PT United Can Co. v. Crown Cork & Seal Co.,* 138 F.3d 65, 73 (2d Cir. 1998).  As the evidence submitted by Plaintiffs establishes, it is unlikely that an English court would even entertain jurisdiction over this action.  (Toube Decl. ¶¶ 5, 7)

*Private/Public Interest Factors:*  As to the private and public interests, Citigroup bears the burden of demonstrating that those factors "strongly" favor dismissal.  *DiRienzo, supra,* 294 F.3d at 30-31.  No such showing has been made here.

Under the private interests analysis, courts consider:  "(a) the ease of access to evidence; (b) the availability of compulsory process; (c) the cost for cooperative witnesses to attend trial; (d) the enforceability of a judgment; and (e) all other practical matters that might shorten any trial or make it less expensive." *Turedi v. Coca Cola Co.,* 460 F. Supp. 2d 507, 526 (S.D.N.Y. 2006 (Marrero, J.) (citation omitted).  In particular, the presence of "defendants' witnesses and evidence" in the plaintiff's chosen forum weighs against dismissal on *forum non conveniens* grounds.  *See Iragorri v. United Techs. Corp.,* 274 F.3d 65, 75 (2d Cir. 2001).

As noted, Plaintiffs allege – and Citigroup does not deny – that the fraudulent misrepresentations at issue in this action, including those in the Presentation, were prepared by Citigroup employees in New York who were also involved in the management of the Citi TOB Fund.  (*See* Cmplt. ¶¶ 30-46; Skjørshammer Decl. Exhs. C and D)  Thus, witnesses with knowledge of, and paper and electronic discovery related to, the Citi TOB Fund and what Citigroup said about that Fund, are clearly located in this jurisdiction.  Citigroup's assertion that a majority of its documents are at its affiliate in England is completely unsubstantiated and, even if considered, does not tilt the analysis in its favor, since Citigroup controls CGM London and has possession, custody or control over whatever documents exist at its London offices.  *See Miller v. Calotychos,* 303 F.Supp. 2d 420, 429 (S.D.N.Y. 2004) (Marrerro, J.) ("Location of

---

[4] In fact, the Second Circuit has instructed courts to consider potential reverse forum-shopping motives by defendants like Citigroup. *Iragorri v. United Techs. Corp.,* 274 F.3d 65, 75 (2d Cir. 2001).

Kasowitz, Benson, Torres & Friedman llp

records is not a compelling consideration where they can be easily transported"); *see also Cyberscan, supra,* 2006 U.S. Dist LEXIS 90375, at *30 ("[T]he defendants offer no reason to think that transporting this evidence [from London] to New York would pose any insurmountable or even significant hardship on the parties"); *Itoba Ltd. v. LEP Group PLC,* 930 F. Supp. 36, 44 (D. Conn. 1996) ("[D]efendants argue that all of the critical documents to the case are located in England. There are, however, key documents in the United States regarding LEP's United States investments in TAC and real estate. To the extent documents exist in England, advances in transportation and communication accord this issue less weight").[5]

On its motion, Citigroup has also failed to "identify with specificity the witnesses who will be necessary to litigate [the] action but whose presence in a New York court will be difficult to secure." *Haywin Textile Prods. v. Int'l Fin. Inv. & Commerce Bank,* 137 F. Supp. 2d 431, 436 (S.D.N.Y. 2001) (Carter, J.). Citigroup does not explain why its purported London and other overseas witnesses are significant to this case, or how having them appear for trial or deposition would be oppressive, particularly since most apparently are employees of CGM London. *See, e.g., Carl Schroeter GmbH & KO., KG. v. Crawford & Co.,* 2009 U.S. Dist. LEXIS 43488, at *29 (E.D. Pa. May 19, 2009) ("[A]s the parent company of Crawford Venezuela, Crawford should be able to produce employees of Crawford Venezuela to testify at trial if necessary"). In contrast, Plaintiffs have identified material Citigroup witnesses in this forum and the expected subjects of their testimony. (Skjørshammer Decl. ¶ 22)

Lastly, public interest factors also support denial of Citigroup's motion. Although Citigroup relies on unsubstantiated assertions of congestion and the interests of Norway, consideration of "the locus of the alleged culpable conduct . . . and the connection of that conduct to plaintiff's chosen forum," *Carl Schroeter GmbH & KO., KG. supra,* 2009 U.S. Dist. LEXIS 43488, at *30-31 (quotations omitted), clearly supports New York as the appropriate forum. And, once again, "United States courts have an interest in enforcing United States securities laws. . . ." *Cyberscan, supra,* 2006 U.S. Dist. LEXIS, at *37 (quotation omitted). Here, the alleged culpable conduct occurred in New York, and there is a significant public interest in seeing the U.S. securities laws applied to that conduct. *See DiRienzo, supra,* 294 F.3d at 28.

## III.    Subject Matter Jurisdiction

When determining whether a district court may exercise subject matter jurisdiction over the securities claims of foreign plaintiffs, courts in the Second Circuit look at, among other things, "whether the wrongful conduct occurred in the United States (the 'Conduct Test')." *Tabor v. Bodisen Biotech, Inc.,* 581 F. Supp. 2d 552, 558 (S.D.N.Y. 2008) (Marrero, J.). The Conduct Test is met whenever "the defendant's activities in the United States were more than

---

[5] Citigroup also contends that since some of Plaintiffs' documents would require translation from Norwegian to English, England and/or Norway are better forums. Of course, such an argument is a red herring: the vast majority of relevant documents are in English (*see, e.g.,* Skjørshammer Decl. ¶ 3 and Exhs. A-P), and to the extent some documents are not in English, they would still require translation in England. *Further, in Norway, the numerous English documents in this case would have to be translated into Norwegian. See, e.g., Traver v. Officine Meccaniche Toshci Spa,* 233 F. Supp. 2d 404, 416 (N.D.N.Y. 2002) ("Defendant has not explained how transporting documents from Italy, and even translating those documents, would be oppressive or vexatious").

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

'merely preparatory' to a securities fraud conducted elsewhere" and the "activities or culpable failures to act within the United States 'directly caused' the claimed losses." *Itoba Ltd. v. LEP Group PLC*, 54 F.3d 118, 122 (2d Cir. 1995) (citations omitted). "Although no precise test has emerged from the various decisions in [the Second] Circuit discussing the application of the Conduct Test," this Court has identified six factors significant to this analysis, including: (1) whether securities fraud has been adequately alleged, (2) the relevant contacts/events in the United States as compared to contacts/events in foreign states, (3) the timing of relevant domestic and foreign conduct, (4) the materiality/substantiality of the domestic conduct, (5) the causal connection between the domestic conduct and plaintiff's alleged losses, and (6) overarching measures of reasonableness and fairness. *Tabor, supra,* 581 F. Supp. 2d at 559.

Under the first factor, the Court examines whether plaintiffs have asserted "sufficient operative facts describing acts or transactions that, if proved, would constitute a violation of [United States securities laws]." *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d at 376. Here, the Complaint easily satisfies the elements of a claim under Section 10(b) of the Securities and Exchange Act of 1934 (15 U.S.C. § 78i(b)). (*See* Cmplt. ¶¶ 29-83)

Under the second factor, a court looks at the "'essential core' or center of gravity of the wrongdoing," and thus where the predominant activities of the alleged fraudulent transaction took place. *Tabor, supra,* 581 F.Supp. 2d at 561 (*citing Fidenas AG v. Compagnie Internationale Pour L'Informatique CII Honeywell Bull S.A.*, 606 F.2d 5, 8 (2d Cir. 1979)). Here, the "essential core" of the tortious conduct occurred in New York, where, among other things, the misrepresentations were prepared for dissemination to Terra and the Municipalities.

"Under the [third] timeline factor, a court considers the time within which the alleged fraudulent conduct in the United States took place and when the alleged foreign fraudulent conduct occurred." *Id.* at 562. Here, all the alleged fraudulent conduct occurred in the United States, and foreign conduct involved the mere act of passing misrepresentations on to Plaintiffs.

Under the fourth factor, "a court considers the materiality/substantiality of the domestic conduct relative to the particular fraudulent transaction the pleadings describe." *Id.* Here, Plaintiffs not only allege that the fraud was perpetrated from the United States, but that Citigroup managed the Citi TOB Fund in this forum and promoted and marketed investments linked to the Fund from the United States. (Cmplt. ¶¶ 30-49, 60-76) *See also Alfadda v. Fenn*, 935 F.2d 475, 478-79 (2d Cir. 1991); *In re Vivendi Universal, S.A. Sec. Litig.*, 2004 U.S. Dist. LEXIS 21230, at *14-15 (S.D.N.Y. Oct. 22, 2004) (Holwell, J.).

"Under [the fifth factor,] the causation factor, a court considers whether the material conduct alleged to have occurred in the United States was in fact the conduct that caused the foreign plaintiffs' alleged losses." *Tabor, supra*, 581 F. Supp. 2d at 562. Here, CGM New York and CAI's alleged fraudulent conduct, including their preparation of the alleged misrepresentations in the Presentation, induced the Municipalities' investment in the FLNs and led directly to the losses suffered by Plaintiffs. (Cmplt. ¶¶ 29-76)

Lastly, under the reasonableness/fairness factor, "a court considers whether extending jurisdiction in this case would be reasonable and in accordance with Congressional policy. In analyzing this factor, a court assesses what vital United States interest would be served by

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

providing a forum here and giving effect to American laws to adjudicate foreign claims." *Tabor, supra*, 581 F. Supp. 2d at 563 (citation omitted). Enforcing U.S. securities laws over Citigroup's New York operations meets this final factor, even though the victims are from a foreign country. *Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974, 987 (2d Cir. 1975) ("Congress did not mean the United States to be used as a base for fraudulent securities schemes even when the victims are foreigners . . ."); *Tabor, supra,* 581 F. Supp. 2d at 558 ("Congress did not want to allow the United States to be used as a base for manufacturing fraudulent security devices for export, even when these are peddled only to foreigners") (quotations omitted).

Finally, Citigroup is correct that *Bersch, supra,* 519 F.2d 974, is the seminal Second Circuit case regarding the Conduct Test. Over the past thirty-odd years, however, this Court has recognized that, "[i]n several more recent cases . . . the Second Circuit Court, while reaffirming *Bersch* and paying it homage as the Circuit's controlling rule, has nonetheless elaborated other standards that may be construed as modifying the *Bersch* doctrine . . . ." *In re Alstom SA Sec. Litig., supra,* 406 F. Supp. 2d at 373. One such recent decision is *SEC v. Berger,* 322 F.3d 187, 194 (2d Cir. 2003), where the Second Circuit rejected a defendant's attempts to "analogize[] the circumstances in [that] case to the facts in *Bersch*," as Citigroup attempts to do here:

> While it is true that in this case, as in *Bersch*, the fraudulent document actually provided to the Fund's investors "emanated from a foreign source," *id.*, *Bersch* does not control the outcome here. . . . [O]ur holding in *Bersch* was based on the fact that "the United States activities [were] merely preparatory . . . and [were] relatively small in comparison to those abroad." *Id.* In this case, however, the fraudulent conduct was carried out entirely by Berger in New York . . . . Although the statements that ultimately conveyed the fraudulent information to investors were prepared and mailed in Bermuda, the preparation and mailing of these inaccurate statements was not itself fraudulent . . . .

322 F.3d at 195; *see also ITT v. Cornfeld,* 619 F.2d 909, 920 (2d Cir. 1980); *Itoba Ltd., supra,* 54 F.3d at 123. Here, as in *Berger,* the alleged misrepresentations were prepared in New York and merely conveyed to Plaintiffs by a foreign affiliate. Subject matter jurisdiction under the U.S. securities laws clearly exists over Plaintiffs' claims.

For the reasons set forth above, Plaintiffs respectfully submit that Citigroup's motion to dismiss on *forum non conveniens* and subject matter jurisdictional grounds should be denied.

Respectfully submitted,

Michael M. Fay

cc:    John F. Baughman, Esq. (*via hand delivery*)