KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

1633 BROADWAY

NEW YORK, NEW YORK 10019-6799

212-506-1700

FACSIMILE: 212-506-1800

MICHAEL M. FAY
212-506-1706

ATLANTA
HOUSTON
NEWARK
SAN FRANCISCO

October 28, 2009



**VIA HAND DELIVERY**

The Honorable Victor Marrero
United States District Court for the
 Southern District of New York
United States Courthouse
500 Pearl Street, Suite 660
New York, New York 10007

    Re:   *Terra Securities ASA Konkursbo, et al. v. Citigroup, Inc., et al.,*
           No. 09 Civ. 7058 (S.D.N.Y.) (VM)

Dear Judge Marrero:

      We write in response to Citigroup's October 21, 2009 reply ("Def. Reply") in support of its motion to dismiss this action on *forum non conveniens* and subject matter jurisdictional grounds. Citigroup has failed to meet its burden on its motion.[1]

**I.    Citigroup Has Failed To Demonstrate That
New York Is A Genuinely Inconvenient Forum**

      *Citigroup concedes that the FLNs, the securities at issue here, were an investment in the New York-based Citi TOB Fund.*[2] Citigroup offers nothing to refute Plaintiffs' showing that the Fund's managers are located in New York, where the alleged misrepresentations originated. In fact, Citigroup's entire strategy on its motion is to try to recharacterize the nature of Plaintiffs' action by ignoring the substance of the underlying investment and, instead, focusing on a "sales" team in London that purportedly "assembl[ed] and distribut[ed]" documents and worked with an

---

[1]    Because Citigroup only last week submitted its evidence in support of its motion, Plaintiffs submit herewith two brief reply declarations, from Jon E. Skjørshammer ("Skjørshammer Rep. Decl.") and Kim Conroy ("Conroy Rep. Decl."). Except as otherwise defined, capitalized terms used herein are the same as those used in Plaintiffs' October 14, 2009 letter to the Court in opposition to the motion ("Pl. Opp.") or in the Def. Reply.

[2]    Indeed, Citigroup's filings repeatedly recognize that CAI was the New York-based investment manager of the Citi TOB Fund, and that CGM New York and Citigroup, Inc. were also involved with the Citi TOB Fund. (*See, e.g.,* Wood Decl. Exhs. 1 at 7, 28, 29, 36, 38, 55, 66 and 67; 2 at 7, 28, 29, 36, 38, 55, 66 and 67; 5) In addition, one of those documents purports to be, but does not seem to be, a subscription agreement for NOK 243 million of the FLNs. (*See id.* Exh. 7 at 2 (purporting to address issuance of NOK 116 million, not the NOK 243 million referenced on page 1).)

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

unidentified "structuring team." (Arnold Decl. ¶¶ 4-5, 10) Citigroup nowhere explains how these London employees, who had no involvement with the Citi TOB Fund, make New York a "genuinely inconvenient" forum or Norway or England "significantly preferable" fora in a case about the New York-based Fund. *See Bigio v. Coca-Cola Co.*, 448 F.3d 176, 179 (2d Cir. 2006).

Indeed, in this case, the contacts with New York go to the core of Plaintiffs' allegations regarding misrepresentations in the Presentation. Although Citigroup claims Arnold and others assembled and distributed marketing materials, including the Presentation, and that the Presentation was somehow "communicated" by a Netherlands affiliate,[3] it never denies that the document originated in New York. Nor does it deny that the Presentation bears the name of New York-based CAI on every page, and that the Presentation identifies CAI as the manager of the Citi TOB Fund. Moreover, the Presentation is in the same format as the September 2007 presentation *that was forwarded to Terra from Henick, the New York-based manager of the Fund*. (*Compare* Skjørshammer Decl. Exhs. D and M) As proof of the disingenuousness of Citigroup's contentions, that September 2007 presentation, which came directly from Henick, also purports to be "communicated" by a Netherlands affiliate. (*Id.* Exh. M at 3)

*Citigroup is engaging in reverse forum shopping*: Citigroup mischaracterizes comments made by Terra's administrator, Jon E. Skjørshammer, in an attempt to portray Plaintiffs' decision to commence litigation in the United States as "forum shopping."[4] However, Plaintiffs' motivation for suing in this forum was simple: Citigroup is located here, the alleged misconduct occurred here and Plaintiffs had no guarantee that Citigroup would voluntarily appear in any other jurisdiction. *See, e.g., Iragorri v. United Tech. Corp.*, 274 F.3d 65, 73 (2d Cir. 2001) (*en banc*) (where a plaintiff "leaves her home district to sue the defendant where the defendant has established itself and is thus amenable to suit, this would not ordinarily indicate a choice motivated by desire to impose tactical disadvantage on the defendant"). (*See also* Skjørshammer Rep. Decl. ¶¶ 1-2) In fact, Citigroup is actually engaging in reverse forum shopping: Citigroup wants this case to be adjudicated anywhere other than its own home town.

In any event, absent evidence of misconduct or *de minimis* contact with the forum, there is nothing wrong with "forum-shopping." *See, e.g., In re Air Crash Near Peixoto De Azevada, Brazil*, 574 F. Supp. 2d 272, 279 (E.D.N.Y. 2008) (("'[A]ny lawyer who files a case on behalf of

---

[3] Courts have refused to give significant weight to such technical *indicia* of "foreignness." *See, e.g., In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 129-130 (Bankr. S.D.N.Y. 2007) (in denying motion for recognition of foreign liquidation proceedings, the bankruptcy court reasoned that Cayman Islands-registered funds were actually based in New York because, among other things, there were no employees in the Cayman Islands, and the investment manager for the funds was located in New York).

[4] For example, Citigroup cites to the 2008 annual report on the status of the Terra liquidation filed by, among others, Jon Skjørshammer. (Wood Decl. Exh. 9) The report relays to the Norwegian court the conclusion of British attorneys hired by the estate to analyze limited potential claims against CGM London in England under the distribution agreements. The lawyers concluded that the agreements between CGM London and Terra, did not support a claim under English law. Still, as it is stated in the report, the British attorneys did not assess the composition of the credit derivative part of the municipalities' investments at all. The estate (and the creditors' committee) independently considered that "[t]o the extent that the credit derivatives have been put together with another credit risk other than the one that has been listed in the product information and/or the anticipated yield deviates from that which has been informed, this may provide a basis for a claim against Citibank. A clarification of these problems . . . [is] being evaluated by the estate." (Id. at 10 (translated version)) Such clarification work has now taken place and revealed the facts alleged in the Complaint.

2

a client must consider which of the available fora might yield some advantage to his client, and thus, to that degree, engages in 'forum shopping'") (*quoting Employers Ins. of Wausau v. Fox Entm't Group, Inc.*, 522 F.3d 271, 276 (2d Cir. 2008)). Accordingly, inappropriate filings arise only where there is evidence of "manipulative or deceptive behavior" or "ties between the litigation and the forum" that are "tenuous or *de minimis*." *Employers Ins. of Wasau, supra*, 522 F.3d at 276. Citigroup has made no such showing here.[5]

*Citigroup miscites the law of deference*: In asserting (Def. Reply at 2) that because Plaintiffs are foreign entities, their choice of forum is "entitled to the lowest level of deference," Citigroup mischaracterizes Second Circuit precedent. In fact "[t]he degree of deference assigned to plaintiff's choice depends on the specific facts of the case and may be viewed as operating along a 'sliding scale.'" *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 71 (2d. Cir. 2003) *See also Bigio, supra*, 448 F.3d at 179 ("[T]he more that a plaintiff, even a foreign plaintiff, chooses to sue in a United States court for 'legitimate reasons,' the more deference must be given to that choice") (quotation omitted). Here, Plaintiffs have presented substantial *bona fide* reasons for suing in New York, and their choice deserves substantial deference.

*The private interest factors favor New York*: Citigroup also fails to demonstrate that New York presents any practical inconvenience that "strongly favors" dismissal. *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 30-31 (2d Cir. 2002). Although Citigroup asserts that "the majority of key documents and witnesses are overseas," this contention is unsubstantiated. As Citigroup concedes by its silence, key Citi TOB Fund witnesses and documents are here in New York. Instead, Citigroup identifies only two members of its London "sales team" – Arnold and Hafsteen – and five "potential" witnesses based in Norway (Def. Repl. at 3), but nowhere describes how securing their testimony will be difficult. Further, Citigroup's argument regarding "overseas" documents is particularly unpersuasive, given that Citigroup quickly assembled transactional documents purportedly *from CGM London* for its Reply. (*See* Wood Decl. Exhs. 1-4, 6 and 7); *see also* cases cited in Pl. Opp. at 4-5.

Citigroup further contends that Plaintiffs have failed to identify any communication between the Municipalities and Citigroup that was linked to New York. This contention is demonstrably false: as Terra's distributor agreements provided, Terra was contractually bound to use, and use exclusively, in its communications with the Municipalities, the "Marketing Materials" provided by Citigroup. (Wood Decl. Exhs. 3 at 5) The principle "Marketing Material[]" provided to Terra was the Presentation. (*See* Skjørshammer Decl. Ex. D) In fact, Hafsteen's email to Terra attaching the Presentation affirmatively states: "For marketing please use our presentation "Municipal Arbitrage Fund – MARKETING PRESENTATION . . . ." (*Id.*)

*The public interest factors favor New York*: Lastly, Citgroup fails to demonstrate that public interest factors weigh in favor of dismissal. Even assuming that courts in England and Norway are less congested than courts in New York, this factor "is neutral," in that "it is well-accepted that the Southern District of New York has the resources to adjudicate complex

---

[5] In addition, Citigroup's contention that England is an appropriate forum is based on the unreasonable assumption that *all the parties, including Plaintiffs, would consent to litigation in that jurisdiction.* (Moriarty Decl. ¶¶ 11-13) Further, although Citigroup claims that Moriarty's testimony establishes that the Municipalities could bring English securities claims, Moriarty agrees with Toube that they could not. (*See id.* ¶ 7; Toube Decl. ¶ 4)

litigation . . . ." *Rahl v. Bande,* 328 B.R. 387, 408 (S.D.N.Y. 2006). In any event, where, as here, the alleged securities fraud was designed and implemented locally by New York companies and concerned a New York-managed fund, venue is clearly appropriate. *Cf. In re Nematron Corp. Secs. Litig.,* 30 F. Supp. 2d 397, 404 (S.D.N.Y. 1998) (granting venue transfer because, although shares were sold in New York, the "locus of operative fact" was in Michigan because in securities fraud cases, "[m]isrepresentations and omissions are deemed to 'occur' in the district where they are transmitted or withheld, not where they are received") (quotation omitted).

## II. Citgroup Fails To Refute Plaintiffs' Showing Of Subject Matter Jurisdiction

*Citigroup is exporting an alleged securities scheme constructed in New York:* Citigroup also fails to refute Plaintiffs' showing that, under the Conduct Test, subject matter jurisdiction exists here. Moreover, where the Conduct Test is met, the alternative "Effects Test" (*i.e.,* whether United States investors were injured) need not be met. *Tabor v. Bodisen Biotech, Inc.,* 581 F. Supp. 2d 552, 558 (S.D.N.Y. 2008) (Marrero, J.) ("A plaintiff need only satisfy either the Conduct or the Effects Test to support a finding of subject matter jurisdiction"). As this Court has explained in addressing the Conduct Test, "Congress did not want to allow the United States to be used as a base for manufacturing fraudulent security devices for export, even when these are peddled only to foreigners." *Id.* (quotation omitted).

Indeed, recently obtained documents dramatically demonstrate that Citigroup in fact was "exporting" a fraudulent securities scheme overseas. Plaintiffs have obtained materials that Citigroup used to market a TOB fund to *United States investors*. By contrast with the materials received by Plaintiffs, in the materials Citigroup used for U.S. investors, Citigroup disclosed the facts – concealed from Plaintiffs – that TOB strategy was riskier than equity investments, and that "[w]hile the Fund invests in highly rated fixed income securities, the Fund is not a fixed income alternative, and has a risk profile more similar to an equity investment." (Conroy Repl. Decl. Exh. A at 14, 18) No such revelations appear in the Presentation, which was used to market TOB investments to foreigners.

*Citigroup fails to demonstrate that Plaintiffs do not have cognizable securities claims*: Unable to deny that Plaintiffs' core alleged misconduct took place in New York, Citigroup focuses on the first factor of the Conduct Test, the "Theory of Fraud," and then cites to its self-serving October 14, 2009 letter ("Pleading Letter" or "PL") to Plaintiffs listing the purported deficiencies in Plaintiffs' securities claims. However, Citigroup's assertions are meritless.

Under the "Theory of Fraud" factor, the Court examines whether plaintiffs asserted "sufficient operative facts describing acts or transactions that, if proved, would constitute a violation of United States securities laws." *In re Alstom SA Sec. Litig.,* 406 F. Supp. 2d 346, 376 (S.D.N.Y. 2005) (Marrero, J.). In so doing, "the Court . . . examines and interprets . . . what set of facts and what theory [the Complaint] *fairly* expresses that *could* state a claim on which relief could be granted." *Id.* at 385-86 (emphasis added). Here, the allegations in the Complaint easily satisfy the six basic elements required for a cause of action brought under Section 10(b) and Rule 10b-5: "(1) a material misstatement or omission, (2) scienter, (3) a connection with the purchase or sale of a security, (4) reliance . . ., (5) economic loss, and (6) 'loss causation, *i.e.,* a causal connection between the material representation and the loss.'" *In re Salomon Analyst Metromedia Litig.,* 544 F.3d 474, 478 n.1 (2d Cir. 2008).

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

Nonetheless, Citigroup spends a significant part of its Pleading Letter arguing that extraneous considerations somehow render Plaintiffs' allegations deficient.[6] For example, Citigroup contends (PL at 6-7) that including generalized risk factors in transactional documentation somehow neutralized the direct misrepresentations in its marketing materials. Of course, established case law provides otherwise. *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 930 F. Supp. 68, 72 (S.D.N.Y. 1996) ("Cautionary language [or risk disclosures] must precisely address the substance of the specific statement or omission that is challenged" and "do[] not protect material misrepresentations or omissions when defendants knew they were false when made"). Citigroup also makes a frivolous argument that providing misleading data is somehow not a misrepresentation. (PL at 3-4) No authority is or could be cited for this proposition.

Further, the vague no-reliance language to which Citigroup refers (Def. Reply at 5) in Terra's distributor agreements clearly has no impact on the Municipalities' claims and, even as to Terra, does not nullify direct and specific misrepresentations in Citigroup's mandatory marketing materials. *See, e.g., JPMorgan Chase Bank v. Liberty Mutual Ins. Co.*, 189 F. Supp. 2d 24, 27 (S.D.N.Y. 2002) (with respect to disclaimers, "'the touchstone is specificity,' that is, a clear indication that the disclaiming party has knowingly disclaimed reliance on the specific representations that form the basis of the fraud claim") (quotation omitted). Lastly, although Citigroup asserts that Plaintiffs cannot prove loss causation, Plaintiffs have alleged that Citigroup's New York offices made express misrepresentations about purported market correlations, and that a lack of such correlation caused their losses. (Cmplt. ¶¶ 29-70) Such allegations clearly are sufficient. *In re Alstom SA Sec. Litig.*, supra, 406 F. Supp. 2d at 385-386.

*Citigroup cannot save its motion by falsely labeling its marketing materials "preliminary:"* Finally, Citigroup resorts (Def. Reply at 5) to calling its mandatory market materials (including the Presentation) "preparatory" or "preliminary." Of course, Citigroup's own evidence proves the falsity of these descriptions. (*See, e.g.,* Wood Decl. Exh. 3) Further, as the Second Circuit has made clear, representations upon "which an investor relies in making his or her investment decisions" – *i.e.*, the Presentation – cannot be "merely preparatory to the fraud." *Itoba Ltd. v. LEP Group PLC*, 54 F.3d 118, 123-124 (2d Cir. 1995). Marketing materials that were prepared for the Plaintiffs, and which Citigroup required Terra to use in its dealings with the Municipalities, cannot possibly be construed as "preliminary" or "preparatory."

Plaintiffs respectfully submit that Citigroup's motion to dismiss on *forum non conveniens* and subject matter jurisdictional grounds should be denied.

*[handwritten note: SO ORDERED: The Clerk of Court is directed to enter into the public record of this action the letter above from plaintiffs. 2-16-10]*

Respectfully,

Michael M. Fay

cc:   John F. Baughman, Esq.

---

[6]   Of course, during the September 30, 2009 telephone conference, this Court directed the parties to address Citigroup's pleading issues without resort to an initial Rule 12(b)(6) motion. Further, even if this were a Rule 12(b)(6) motion, parties may not rely on evidence outside of the pleadings. Fed. R. Civ. P. 12(b)(6).