UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TERRA SECURITIES ASA
KONKURSBO, as the Successor in
Interest to TERRA SECURITIES ASA;
the Municipality of BREMANGER; the
Municipality of HATTFJELLDAL; the
Municipality of HEMNES; the
Municipality of KVINESDAL; the
Municipality of NARVIK; the
Municipality of RANA;  and the
Municipality of VIK,

      Plaintiffs,

   v.

CITIGROUP INC.; CITIGROUP
GLOBAL MARKETS INC.; and
CITIGROUP ALTERNATIVE
INVESTMENTS LLC,

      Defendants.

09 Civ. 7058 (VM) (KNF)
ECF Case

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

PAUL, WEISS, RIFKIND, WHARTON &
 GARRISON LLP
Brad S. Karp
John F. Baughman
Susanna M. Buergel

1285 Avenue of the Americas
New York, New York 10019-6064
Tel.  (212) 373-3000

*Attorneys for Defendants Citigroup Inc.,
Citigroup Global Markets Inc., and
Citigroup Alternative Investments LLC*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ....................................................................................................... 3

    A.    The Parties ................................................................................................. 3

    B.    The FLN Transactions .............................................................................. 5

            1.    The Distribution Agreements ....................................................... 5

            2.    The Presentation .......................................................................... 6

            3.    The Offering Memorandum .......................................................... 7

            4.    The Starling FLN Prospectuses .................................................... 8

    C.    The 2007 Credit Crisis ............................................................................. 9

    D.    The Complaint ......................................................................................... 10

ARGUMENT ......................................................................................................... 10

I.    TERRA'S SECURITIES LAW CLAIM SHOULD BE DISMISSED ........................... 10

    A.    Terra Lacks Standing to Pursue A Claim Under Section 10(b) ........................ 11

    B.    Terra Fails to Plead Reasonable Reliance .............................................. 11

            1.    Terra Expressly Disclaimed Reliance on Any Representation by Citi ..... 12

            2.    As a Sophisticated Party, Terra Had a Duty to Investigate and Inquire Regarding Any Purported Misrepresentations ......................................... 13

            3.    Terra Could Not Reasonably Have Relied on Purported Statements Contradicted by Other Disclosures .......................................... 14

    C.    Terra Fails to Plead Loss Causation ....................................................... 17

II.    THE MUNICIPALITIES FAIL TO STATE A CLAIM FOR SECURITIES FRAUD ......................................................................... 19

    A.    The Municipalities Fail to Plead Reasonable Reliance with Particularity ........... 19

    B.    The Municipalities Could Not Reasonably Have Relied on Purported Statements Contradicted by Other Disclosures .................................... 21

    C.    The Municipalities Fail to Plead Loss Causation ................................... 22

III.   PLAINTIFFS' REMAINING CLAIMS SHOULD ALSO BE DISMISSED .................. 24

    A.   Control Person Liability ........................................................................ 24

    B.   Fraud and Fraudulent Inducement ........................................................ 24

    C.   Negligent Misrepresentation ................................................................ 24

CONCLUSION ................................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*,
   651 F. Supp. 2d 155 (S.D.N.Y 2009) .................................................................................... 25

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
   542 F. Supp. 2d 266 (S.D.N.Y. 2008) ................................................................................... 11

*Arduini/Messina P'ship v. Nat'l Med. Fin. Servs.*,
   74 F. Supp. 2d 352 (S.D.N.Y. 1999) ..................................................................................... 17

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ............................................................................................... 10, 18

*Ashland Inc. v. Morgan Stanley & Co.*,
   No. 09 CV 5415, 2010 WL 1253932 (S.D.N.Y. Mar. 30, 2010) ............................. 17, 24, 25

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007) ........................................................................................ 10, 13, 24

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988) ............................................................................................................. 19

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................................. 10

*Birnbaum v. Newport Steel Corp.*,
   193 F.2d 461 (2d Cir. 1952) ................................................................................................. 11

*Blue Chip Stamps v. Manor Drug Stores*,
   421 U.S. 723 (1975) ............................................................................................................. 11

*Brown v. E.F. Hutton Group*,
   735 F. Supp. 1196 (S.D.N.Y. 1990) ...................................................................................... 21

*Brown v. E.F. Hutton Group, Inc.*,
   991 F.2d 1020 (2d Cir. 1993) ............................................................................................... 12

*Carapico v. Philadelphia Stock Exch.*,
   Civ. A. No. 93-3066, 1994 WL 50295 (E.D. Pa. Feb. 14, 1994) ......................................... 11

*Carlin Equities Corp. v. Offman*,
   No. 07-Civ-359, 2008 WL 4387328 (S.D.N.Y. Sept. 24, 2008) ........................................... 13

*Castellano v. Young & Rubicam, Inc.*,
   257 F.3d 171 (2d Cir. 2001) ................................................................................................. 24

iii

*CDO Plus Master Fund Ltd. v. Wachovia Bank, N.A.*,
   No. 07 Civ. 11078, 2009 WL 2033048 (S.D.N.Y. July 13, 2009) ........................................ 13

*Cortec Indus., Inc. v. Sum Holding L.P.*,
   949 F.2d 42 (2d Cir. 1991) ......................................................................................................... 3

*D.E.&J Ltd. v. Conaway*,
   284 F. Supp. 2d 719 (E.D. Mich. 2003) ................................................................................. 23

*Defer LP v. Raymond James Fin., Inc.*,
   654 F. Supp. 2d 204 (S.D.N.Y. 2009) .................................................................................... 19

*Doehla v. Wathne Ltd.*,
   No. 98 Civ. 6087, 1999 WL 566311 (S.D.N.Y. Aug. 3, 1999) .............................................. 20

*Dura Pharm., Inc. v. Broudo*,
   544 U.S. 336 (2005) .................................................................................................... 10, 17, 18

*Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*,
   343 F.3d 189 (2d Cir. 2003) .......................................................................................... 12, 14

*Fadem v. Ford Motor Co.*,
   352 F. Supp. 2d 501 (S.D.N.Y. 2005) .................................................................................... 19

*Feinman v. Schulman Berlin & Davis*,
   677 F. Supp. 168 (S.D.N.Y. 1988)........................................................................................ 22

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   574 F.3d 29 (2d Cir. 2009) ...................................................................................................... 17

*Gant v. Wallingford Bd. of Educ.*,
   69 F.3d 669 (2d Cir. 1995) ........................................................................................................ 3

*Harsco Corp. v. Segui*,
   91 F.3d 337 (2d Cir. 1996) ...................................................................................................... 25

*Healthcare Fin. Group, Inc. v. Bank Leumi USA*,
   669 F. Supp. 2d 344 (S.D.N.Y. 2009)....................................................................... 18, 23, 25

*Lattanzio v. Deloitte & Touche LLP*,
   476 F.3d 147 (2d Cir. 2007) .................................................................................................... 10

*Lentell v. Merrill Lynch & Co., Inc.*,
   396 F.3d 161 (2d Cir. 2005) .............................................................................................. 18, 22

*In re Livent, Inc. Noteholders Sec. Litig.*,
   151 F. Supp. 2d 371 (S.D.N.Y. 2001)......................................................................... 12, 14, 17

iv

*Luce v. Edelstein*,
    802 F.2d 49 (2d Cir. 1986) ..................................................................................... 21

*MBIA Ins. Corp. v. Spiegel Holdings, Inc.*,
    No. 03 CV 10097, 2004 WL 1944452 (S.D.N.Y. Aug. 31, 2004) ......................................... 11

*Medis Investor Group v. Medis Techs. Ltd.*,
    586 F. Supp. 2d 136 (S.D.N.Y. 2008) .................................................................... 24

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
    No. 02 Civ. 9690, 2008 WL 2324111 (S.D.N.Y. June 4, 2008) ...................................... 22, 23

*In re One Commcn's Corp.*,
    No. 07 Civ. 3905, 2009 WL 857535 (S.D.N.Y. Mar. 31, 2009) ..................................... 13, 14

*In re Optionable Sec. Litig.*,
    577 F. Supp. 2d 681 (S.D.N.Y. 2008) .................................................................... 16

*In re Parmalat Sec. Litig.*,
    659 F. Supp. 2d 504 (S.D.N.Y. 2009) .................................................................... 21

*Roth v. Jennings*,
    489 F.3d 499 (2d Cir. 2007) ..................................................................................... 3

*Schlaifer Nance & Co. v. Estate of Andy Warhol*,
    119 F.3d 91 (2d Cir. 1997) ..................................................................................... 14

*In re Sec. Capital Assurances, Ltd. Sec. Litig.*,
    07 Civ. 11086, 2010 WL 1372688 (S.D.N.Y. Mar. 31, 2010) .......................................... 23

*Starr ex rel. Estate of Sampson v. Georgeson Shareholder, Inc.*,
    412 F.3d 103 (2d Cir. 2005) ..................................................................................... 17

*Stephenson v. CITCO Group Ltd.*,
    09 CV 00716, 2010 WL 1244007 (S.D.N.Y. Apr. 1, 2010) ............................................. 25

*In re The Warnaco Group, Inc. Sec. Litig.*,
    388 F. Supp. 2d 307 (S.D.N.Y. 2005) .................................................................... 16

*Veal v. Geraci*,
    23 F.3d 722 (2d Cir. 1994) ..................................................................................... 21

## STATUTES

15 U.S.C. § 78j(b) .......................................................................................................... 11

15 U.S.C. § 78t(a) .......................................................................................................... 24

## OTHER AUTHORITIES

17 C.F.R. § 240.10b-5(c)...........................................................................................................11

Fed. R. Civ. P. 9(b) ................................................................................................................10

Fed. R. Evid. 201(b)(2) ...........................................................................................................3

Henry M. Paulson Jr., Op-Ed., *Fighting the Financial Crisis, One Challenge at a Time,*
    N.Y. Times, Nov. 18, 2008...............................................................................................22

## PRELIMINARY STATEMENT

This lawsuit ought to be between Plaintiff Terra Securities ASA Konkursbo ("Terra"), a now-defunct Norwegian securities firm, and the other seven Plaintiffs, its clients, all Norwegian municipalities ("Municipalities").  Terra, a long-time investment advisor for the Municipalities, acted as their "agent" in the purchase of "fund linked notes" ("FLNs") structured by various Citigroup entities (collectively "Citi").  However, Citi had no direct contact with the Municipalities.  Terra knew – because the deal documents it received from Citi said so – that the investments were "*speculative*" and involved "*a high degree of risk*," including possible loss of "all or substantially all" of the investment."   Terra expressly warranted to Citi that it had "*sufficient knowledge, experience, and professional advice to make its own evaluation of the merits and risks,*" disclaimed all reliance on Citi "*for information, advice or recommendations of any sort,*" and agreed that it would distribute and market the FLNs only "*to sophisticated institutional investors*."  Notwithstanding its knowledge of the risks and its undertakings to Citi, Terra marketed the FLNs to the allegedly unsophisticated Municipalities – *without passing on to them* the risk disclosures Citi had made to Terra.

After the Municipalities lost money on their FLN investment as the credit markets collapsed worldwide in 2007, the Norwegian Financial Supervisory Authority determined that Terra had engaged in *"serious and systematic"* violations of Norwegian securities laws by, among other things, failing to pass along to the Municipalities critical information Citi had provided about the FLNs.  The Authority revoked Terra's license to sell securities and the firm went out of business.

Notwithstanding Terra's own gross misconduct and the numerous risk disclosures Citi made in the deal documents – not to mention the intervening global financial crisis –  Plaintiffs blame Citi for both Terra's bankruptcy and the Municipalities' investment losses.  Plaintiffs allege that they were fraudulently induced into purchasing the securities by

misrepresentations that the FLNs were "safe, conservative investments" that were protected by "near-perfect" hedging strategies.

Terra's claims border on frivolous. It admittedly acted only as the Municipalities' agent and merely "assisted the Municipalities in purchasing" the FLNs. Decades-old Supreme Court precedent holds that only ***actual purchasers*** have standing to assert claims under Rule 10b-5. Terra does not allege that it purchased any securities for its own benefit and, therefore, its claims should be dismissed. Furthermore, even if Terra were a *bona fide* purchaser, its claims would still fail because it cannot allege reasonable reliance on Citi's supposed misstatements. Terra specifically disclaimed reliance on Citi "of any sort." If that were not enough, Terra's claims are also barred because it is a sophisticated securities dealer that received extensive disclosures concerning the very risks it now – after the fact, and contrary to its representations at the time – claims not to have understood. Finally, Terra cannot allege "loss causation" because its "loss" is plainly the result of its own misconduct, which resulted in the revocation of its license.

As for the Municipalities, Citi did not deal with them; it dealt only with their agent, Terra. Under basic principles of agency law, the Municipalities are bound by their agent's knowledge and disclaimers of reliance. Because Terra could not have relied on Citi's alleged misstatements, neither could the Municipalities. Moreover, the Complaint does not properly allege that the Municipalities actually relied on anything that Citi supposedly said. The Complaint does not identify a single person at any of the Municipalities who read and relied on any materials attributable to any Citi entity. Instead, the Complaint treats the Municipalities as an undifferentiated group and alleges merely that they relied "***either***" on preliminary marketing materials prepared by Citi "***or***" on advice from their agent Terra. This is insufficient to plead reliance; Plaintiffs must allege with particularity "where, when and to whom" allegedly fraudulent statements were made. In addition, the Municipalities fail to plead loss causation

because they do not allege facts showing that their investment losses were caused by Citi's alleged misconduct, as opposed to Terra's securities law violations or the global financial crisis.

The Court has already permitted Plaintiffs to attempt to cure defects in their initial pleading by filing an Amended Complaint. That effort failed, Plaintiffs' claims are incurably flawed, and the Court should now dismiss this case with prejudice.

## BACKGROUND[1]

### A.    The Parties

Defendant Citigroup Inc. is a holding company that, through its subsidiaries, provides a range of financial services in countries around the world. Defendant Citigroup Global Markets Inc. ("CGMI") is the U.S. broker-dealer subsidiary of Citigroup Inc. Defendant Citigroup Alternative Investments LLC ("CAI") specializes in alternative investments, including hedge funds, private equity, and real estate. Non-party Citigroup Global Markets Limited ("CGML") is the European-based broker-dealer subsidiary of Citigroup Inc. CGMI, CAI and CGML (collectively, and with Citigroup Inc., "Citi") were involved in structuring the FLNs at issue in this action.

Plaintiff Terra Securities ASA Konkursbo is the successor in interest to Terra Securities ASA. The Complaint recognizes their identity of interest by referring to them both as "Terra." (Am. Cmplt. ¶ 16.)[2] Terra was created in 1997 as a full-service investment bank. (Ex.

---

[1]    Solely for purposes of this motion, Defendants accept as true the non-conclusory factual allegations of the complaint. *See Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995). When considering a motion to dismiss under Rule 12(b)(6), a court may also refer to documents referenced in the complaint, matters of public record, and authentic documents upon which plaintiffs' claims are based. *See, e.g.*, *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). Additionally, the Court may take judicial notice of facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

[2]    Citations to "Am. Cmplt. ¶ __" refer to Plaintiffs' Amended Complaint dated March 15, 2010. Citations to "Ex. __" refer to the exhibits attached to the Declaration of John F. Baughman dated April 12, 2010, filed in support of Defendants' motion to dismiss.

1 at 3.)   Among its various activities, Terra provided a variety of financial products and investment services to Norwegian banks and to private and institutional investors.  (*Id.*)

Plaintiffs Bremanger, Hattfjelldal, Hemnes, Kvinesdal, Narvik, Rana, and Vik are Norwegian municipalities.  (Am. Cmplt. ¶¶ 17-23, collectively, the "Municipalities.")   In connection with the transactions at issue, Terra acted as the Municipalities' "agent."  (*See, e.g.*, Am. Cmplt. ¶¶ 31, 102, 113, 119.)

In October 2007, the news media began reporting that several Norwegian towns had invested hundreds of millions of Norwegian Kroner in securities products through Terra, all of which were declining in value.[3]   The next month, the Norwegian Financial Supervisory Authority ("FSA") launched an investigation of Terra in connection with its sale of certain securities, including some of the FLNs at issue here.  (Ex. 2 at 1; *see* Am. Cmplt. ¶ 82.)

On November 27, 2007, the FSA issued an "Advance Notification Regarding Revocation of License," finding that Terra had committed "serious and systematic" violations of Norwegian securities laws by, among other things, failing to provide necessary information to the Municipalities about the products in which they were investing.  (Ex. 2 at 5-6.)  With respect to the FLNs, the FSA found that Terra provided a marketing presentation to the Municipalities, but *excluded risk disclosures* that were included in the original presentation prepared by Citi.  (Ex. 2 at 4.)  The FSA further found that additional risk disclosures were made in a document prepared by Citi called "Funds linked Repackaged Note," but that Terra did not provide the document to the Municipalities until after the transaction closed.[4]  (*Id.*)  The FSA determined

---

[3]   *See, e.g.*, Øystein Byberg, *Kommuner får sjokkregning på 100 millioner*, Finansavisen, Oct. 31, 2007, *available at* http://www.hegnar.no/bors/article233378.ece.  (Ex. 9.)

[4]   The "Funds linked Repackaged Note" was a term sheet for the Starling FLNs provided to Terra by Citi in advance of the Starling trades.  The disclosures in that document are also contained in the prospectuses for the Starling notes which, as described below, were publicly available and which Terra agreed to provide to potential investors in advance of any investment.  (Ex. 7 at 26-27; Ex. 8 at 26-27.)  *See infra* pp. 6-9.

"***the issue to be so serious that it is necessary to revoke all of Terra Securities ASA's licenses to perform investment services***."  (*Id.* at 7 (emphasis added).)  "As a result of that investigation, Terra ceased operations and was forced into bankruptcy."  (Am. Cmplt. ¶ 82.)

## B.     The FLN Transactions

FLNs are derivative instruments whose return is determined by the performance of a reference fund.  In the spring of 2007, Terra expressed interest in FLNs linked to the Citi Tender Option Bond Fund (the "TOB Fund"), a fund managed by CAI.[5]  (*Id.* ¶ 30.)  The TOB Fund was designed to profit from fixed-income arbitrage opportunities – taking short-term loans at one interest rate and investing the funds in long-term municipal bonds that pay a high interest rate and/or generate tax-free income.  (*Id.* ¶¶ 32-34.)  The TOB Fund would then enter into interest rate swaps to help hedge against adverse changes in municipal bond values.  (*Id.* ¶ 38.)

In May and June of 2007, the Municipalities – through their agent, Terra – purchased $115 million in FLNs linked to the TOB Fund.  (*Id.* ¶ 1.)  The FLNs were issued by two different European entities, Starling Finance P.L.C. and Banque AIG.  (*Id.* ¶ 30.)

### 1.     The Distribution Agreements

Citi had no communication with the Municipalities concerning their purchase of the FLNs; it dealt solely with Terra.  CGML and Terra entered into Distribution Agreements (*Id.* ¶ 27; Exs. 3, 4) providing that:

- Terra was to determine, "***without reliance upon CGML or its affiliates***, the economic risks and merits, as well as the legal, tax, and accounting characterizations and consequences of the Notes."  (Ex. 3 at 2 (§ 4) (emphasis added); Ex. 4 at 2 (§ 4) (emphasis added).)

---

[5]   Tender option bonds are short-term tax-exempt instruments based on a portfolio of fixed-rate, long-term municipal bonds combined with an interest rate swap to create short-term tax-exempt floating rate bonds. The tax-exempt status creates a high level of demand, particularly from investors who seek tax-exempt cash flow as a source of annual income and revenue.

- "(1) *Terra has sufficient knowledge, experience, and professional advice to make its own evaluation of the merits and risks* of a transaction of this type and (2) *Terra is not relying on CGML nor on any of its affiliates for information, advice or recommendations of any sort* except for the accuracy of specific factual information about the terms of the transaction . . . ." (Ex. 3 at 2 (§ 4) (emphases added); Ex. 4 at 2 (§ 4) (emphases added).)

The Distribution Agreements also attached "Distribution Terms In relation to Structured Credit Products" which provide that:

- Terra will "distribute and market [the notes] to *sophisticated institutional investors* . . . ."  (Ex. 4 at 4 (§ 2.1) (emphasis added).)

- Terra agreed to "*make available to prospective investors, promptly upon their request and in any event prior to their commitment to purchase a Product, copies of the relevant Prospectus.*"   (Ex. 3 at 5 (§ 3.4) (emphasis added); Ex. 4 at 5 (§ 3.4) (emphasis added).)

- Terra "is *experienced in distributing structured products and understands the risks inherent in them and undertakes that it will obtain and review the Prospectus and Marketing Materials* relating to each Product prior to undertaking any Selling Activities . . . ." (Ex. 3 at 5 (§ 4.2(d) (emphasis added)); Ex. 4 at 5 (§ 4.2(d)) (emphasis added).)

- Terra will "(i) assess and confirm that the Products are suitable for each person to whom the Products are marketed and sold and (ii) ensure that each such person understands and accepts the terms and conditions and risks relating to an investment in the Product(s) being purchased by them." (Ex. 3 at 5 (§ 4.2(e)); Ex. 4 at 5 (§ 4.2(e)).)

## 2.    The Presentation

Citi provided Terra with many documents in connection with the FLN transactions, including a May 18, 2007 presentation (the "Presentation") providing introductory information about the TOB Fund.  (Ex. 5; Am. Cmplt. ¶¶ 31-49.)   The Presentation explains:

[i]nvesting in alternative investments is *speculative*, not suitable for all clients, and *intended for sophisticated and experienced investors* who are willing to bear the high economics [sic] risks of the investment, which can include:  *Loss of all or a substantial portion of the investment* due to leveraging, short selling or other investment practices.  (Ex. 5 at 2 (emphases added).)

In addition to providing a summary description of the strategy behind the TOB Fund, the Presentation also discloses several "Key Risks," including:

- "Although the Fund is employing a hedged, leveraged strategy in U.S. municipal bonds, *the Fund may experience substantial volatility* . . . ." (*Id.* at 21 (emphasis added).)

- "Investors *must thus be prepared to lose all or substantially all of their investment* in the Fund."  (*Id.* (emphasis added).)

- "[T]here can be no assurance that the Fund will achieve its investment objectives . . . . Past performance is not an indication of future results." (*Id.*)

- "There exists a possibility that an investor could suffer a substantial or total loss as a result of investment in the Fund."  (*Id.*)

- "[P]articipation in the Fund will generally be an illiquid investment." (*Id.* at 22.)

Moreover, the Presentation directed potential investors to the Offering Memorandum for the TOB Fund for complete details and disclosures about the TOB Fund:

> *This document does not constitute an offering and is meant only to provide a broad overview for discussion purposes.*  All information provided herein is subject to change.  If and when an investment opportunity is structured, *you must obtain and carefully read the related Offering Memorandum*, which will contain the information needed to evaluate the potential investment and provide important disclosures regarding risks, fees and expenses.  *All information provided herein is qualified in its entirety by the Offering Memorandum and the related subscription agreement.*  (Ex. 5 at 2 (emphases added).)

### 3.    The Offering Memorandum

The Offering Memorandum – which potential investors were advised they "must obtain" (*id.*) – included additional detailed risk disclosures:

- "In making an investment decision investors must rely on their own examination of the partnership and the terms of the offering, including the merits and the risks involved . . . . [An investment in the Partnership] is designed only for experienced and sophisticated persons who are able to bear the risk of the substantial impairment or loss of their investment in the Partnership."  (Ex. 6 at iii.)

- "An investment in the Partnership involves a **high degree of risk** and should be undertaken only by investors capable of evaluating and bearing such risk." (*Id.* at 41 (emphasis added).)

- "The Partnership **may incur major losses in the event of disrupted markets and other extraordinary events in which historical pricing relationships . . . become materially distorted.** The risk of loss from pricing distortions is compounded by the fact that in disrupted markets many positions become illiquid, making it difficult or impossible to close out positions." (*Id.* at 43 (emphasis added).)

- "**The Partnership is speculative and involves a substantial degree of risk.** Although the Partnership is employing a hedged, leveraged strategy in U.S. municipal bonds, the Partnership may experience substantial volatility due to changes in the relationship of municipal yields to LIBOR. While the strategy is designed to be interest rate neutral, under-performance and out-performance of municipals relative to LIBOR will generate significant volatility in the Capital Account balances of the Limited Partners." (*Id.* at 48 (emphasis added).)

- "**Limited Partners must be prepared to lose all or substantially all of their investment in the Partnership.**" (*Id.* (emphasis added).)

- "Adverse changes in the slope of the municipal bond yield curve as well as its relationship to the taxable yield curve, among other things, could have a material adverse effect on the Partnership's performance . . . ." (*Id.* at 42.)

- "**The pricing relationship between the municipal bonds controlled directly or indirectly by the Partnership and the hedging strategies used by the Partnership will be imperfect**. An absence or imperfect level and/or application of hedges could result in losses." (*Id.* at 44 (emphasis added).)

### 4.     The Starling FLN Prospectuses

Publicly-available prospectuses for the two FLNs issued by Starling Finance P.L.C.[6] – which, as noted above, Terra agreed to review and provide to all potential investors prior to investment – also contained warnings about suitability and risks.  For example:

---

[6]     Both the Starling Series 12 Prospectus and Starling Series 13 Prospectus are publicly available at the website for the Irish Stock Exchange.
*See* http://www.ise.ie/debt_documents/ Starling2007-12_9395.pdf;
http://www.ise.ie/debt_documents/Sta_9424.pdf.

> Investment in the Notes is only suitable for investors who . . . are highly sophisticated, are particularly knowledgeable in financial matters and have the requisite knowledge and experience in financial and business matters, and access to, and knowledge of, appropriate analytical resources, to evaluate the information contained in this Series Prospectus (including the Base Prospectus) and the merits and risks of an investment in the Notes in the context of such investors' financial position and circumstances.  (Ex. 7 at 4; Ex. 8 at 4.)

Furthermore, the Starling Prospectuses contained specific disclosures regarding the risk posed to collateral:

> The market price of the Collateral will generally fluctuate with, among other things, the liquidity and volatility of the financial markets, general economic conditions, domestic and international political events, developments or trends in a particular industry and the performance of the portfolio of reference entities underlying the Collateral. . . . ***Depending on the market price of the Collateral, any of these events may cause significant losses to the Noteholders and may result in the Notes redeeming at zero***.  (Ex. 7 at 7 (emphasis added); Ex. 8 at 7 (emphasis added).)

Additionally, both Starling Prospectuses included "Special Considerations and Risk Factors," which tracked the risk disclosures in the Offering Memorandum itself.  (Ex. 7 at 45-55; Ex. 8 at 45-55.)

## C.    The 2007 Credit Crisis

In the summer and fall of 2007, a severe and unprecedented credit crisis unfolded across the world economy.  (Am. Cmplt. ¶ 72.)  This economic downturn would become widely recognized as the worst financial crisis since the Great Depression.  As the markets became more illiquid, municipal bond yields dramatically increased and the value of long-term municipal bonds fell.  (*Id.* ¶ 73.)  Investors also shifted to safer and more liquid investments, like U.S. Treasury securities, causing yields to fall on taxable instruments.  (*Id.*)  For the TOB Fund, both of its assets (long-term municipal bonds and the interest rate swaps) fell in value.  (*Id.*)  Accordingly, the value of the FLNs began to rapidly decrease throughout the latter half of 2007 and into the first quarter of 2008.  (*Id.* ¶ 79.)  In total, the Municipalities collectively lost approximately $90 million of their investment.  (*Id.* ¶¶ 78, 79.)

**D.      The Complaint**

This action was commenced on August 10, 2009.  On October 14, 2009, at the Court's direction, Citi provided a detailed letter to Plaintiffs describing the defects of the initial complaint.  (Ex. 11.)  Plaintiffs were then given an opportunity to amend their complaint.

On March 15, 2010, Plaintiffs filed an Amended Complaint asserting four causes of action:  (1) violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder, against CGMI and CAI; (2) violation of Section 20(a) of the 1934 Act, against Citigroup Inc.; (3) fraud, against CGMI and CAI; and (4) negligent misrepresentation, against CGMI and CAI.  Plaintiffs' repleaded claims remain flawed and should be dismissed.

## ARGUMENT

In evaluating a Rule 12(b)(6) motion, a court must accept well-pleaded factual allegations in the complaint as true.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A court, however, need not accept conclusory assertions, legal conclusions, or unwarranted inferences.  *See id.*; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009).  Dismissal is appropriate where a plaintiff fails "to raise a right to relief above the speculative level."  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

## I.
## TERRA'S SECURITIES LAW CLAIM SHOULD BE DISMISSED

To state a claim under Section 10(b) and Rule 10b-5, a plaintiff must allege:  (i) a misstatement or omission (ii) of material fact by a defendant (iii) with scienter, (iv) in connection with the purchase or sale of a security, (v) reasonable reliance by the plaintiff on the representation or omission, and (vi) that the misstatement or omission proximately caused economic loss.  *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005); *Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147, 153 (2d Cir. 2007).  Section 10(b) claims also are subject to the PSLRA's heightened pleading requirements and to Rule 9(b); plaintiffs must allege every element of the fraud with particularity.  *ATSI Commc'ns*, 493 F.3d at 99.

**A.      Terra Lacks Standing to Pursue A Claim Under Section 10(b)**

Critically – and fatally for Terra's claim – Section 10(b) and Rule 10b-5 apply only to practices "in connection with the purchase or sale of any security."  15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5(c).  It is long settled that, under the "*Birnbaum* rule," parties "who were not ***themselves*** purchasers or sellers" lack standing to sue.  *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 742 (1975) (emphasis added); *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461, 464 (2d Cir. 1952) (Rule 10b-5 extends protection "only to the defrauded purchaser or seller").

Here, Terra served as the agent of the Municipalities, not as the actual purchaser of the securities at issue.  (Am. Cmplt. ¶¶ 31, 102, 113, 119.)  Thus, the Complaint variously alleges that Citigroup sold the FLNs "to the Municipalities through Terra;" that Terra "assisted the Municipalities in purchasing;" and that Terra made certain purchases "for the benefit of the investing Municipalities."  (*Id.* ¶¶ 1, 12, 58, 63, 68.)

The Complaint never alleges that Terra purchased (or sold) any security for its own benefit.  That alone is sufficient to defeat its claim.  *See, e.g.*, *MBIA Ins. Corp. v. Spiegel Holdings, Inc.*, No. 03 CV 10097, 2004 WL 1944452, at *2, *3-*4 (S.D.N.Y. Aug. 31, 2004) (under extensive precedent, plaintiff must be an "actual purchaser or seller" (citing *Birnbaum*, 193 F.2d 461)); *Carapico v. Philadelphia Stock Exch.*, Civ. A. No. 93-3066, 1994 WL 50295, at *2 (E.D. Pa. Feb. 14, 1994) (plaintiffs lacked standing because they did not "allege that they [] purchased or sold securities in their own right as to which they themselves were defrauded"), *aff'd*, 43 F.3d 1460 (3d Cir. 1994).

**B.      Terra Fails to Plead Reasonable Reliance**

Terra's securities fraud claim should also be dismissed because it fails to plead reasonable reliance upon the alleged misstatements.  *See In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,  542 F. Supp. 2d 266, 267 (S.D.N.Y. 2008) (reliance must be "reasonable" and

"justifiable" (internal quotation marks omitted)).  In assessing the reasonableness of alleged reliance, courts in the Second Circuit consider "the entire context of the transaction, including factors such as its complexity and magnitude, the sophistication of the parties, and the content of any agreements between them."  *Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*, 343 F.3d 189, 195 (2d Cir. 2003).  *See also Brown v. E.F. Hutton Group, Inc.*, 991 F.2d 1020, 1032 (2d Cir. 1993) ("all relevant factors must be considered and balanced").  Here, Terra cannot plead reasonable reliance because:  (1) it expressly disclaimed reliance on any representation by Citi, (2) it is a sophisticated party with a duty to investigate and inquire about any purported misrepresentation, and (3) the alleged misrepresentations were contradicted by express written disclosures.

### 1.    Terra Expressly Disclaimed Reliance on Any Representation by Citi

By signing the Distribution Agreements, Terra unequivocally disclaimed reliance on any representation by Citi. [7]  The agreements state:

> Prior to entering into the Transaction, Terra should determine, ***without reliance upon CGML or its affiliates***, the economic risks and merits, as well as the legal, tax, and accounting characterizations and consequences of the Notes.

> CGML is presenting [Terra] this document and is willing to negotiate the arrangements with Terra because of CGML's understanding that (1) Terra has sufficient knowledge, experience, and professional advice to make its own evaluation of the merits and risks of a transaction of this type and (2) ***Terra is not relying on CGML nor on any of its affiliates for information, advice or recommendations of any sort*** except for the accuracy of specific factual information about the terms of the transaction, as disclosed in the attached Draft Term Sheet. [8]

---

[7]    "To determine whether a plaintiff's reliance on an alleged misstatement was reasonable, a court may, on a motion to dismiss, examine the text of the documents at issue, including any cautionary language."  *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 439 (S.D.N.Y. 2001) (collecting authorities).

[8]    The Complaint does not take issue with any statements in the Draft Term Sheet.

(Ex. 3 at 2 (§ 4) (emphases added); Ex. 4 at 2 (§ 4) (emphases added).)  Terra accepted the Distribution Agreements and specifically "agree[d] to be bound by [their] terms."  (Ex. 3 at 3; Ex. 4 at 3.)

In the face of these express disclaimers, Terra cannot, as a matter of law, establish reasonable reliance in connection with its securities fraud claim.  Courts in this circuit routinely dismiss securities fraud claims when the plaintiff contractually disclaimed reliance. *See, e.g., ATSI Commc'ns*, 493 F.3d at 105 ("Where the plaintiff is a sophisticated investor and an integrated agreement between the parties does not include the misrepresentation at issue, the plaintiff cannot establish reasonable reliance on that misrepresentation."); *In re One Commcn's Corp.*, No. 07 Civ. 3905, 2009 WL 857535, at *9-*10 (S.D.N.Y. Mar. 31, 2009) (dismissing Section 10(b) claim because a sophisticated plaintiff's reliance on statements extrinsic to a contract is not reasonable if that contract specifically disclaims reliance); *see also CDO Plus Master Fund Ltd. v. Wachovia Bank, N.A.*, No. 07 Civ. 11078, 2009 WL 2033048, at *5 (S.D.N.Y. July 13, 2009) (no reasonable reliance where plaintiff was a sophisticated party that had disclaimed reliance).

**2. As a Sophisticated Party, Terra Had a Duty to Investigate and Inquire Regarding Any Purported Misrepresentations**

There can be no serious dispute that Terra is a sophisticated party.  As its very name makes clear, it was *a securities firm*, and had been in business as such for 10 years.  *See, e.g.*, *Carlin Equities Corp. v. Offman*, No. 07-Civ-359, 2008 WL 4387328, at *7 (S.D.N.Y. Sept. 24, 2008) (finding a party with years of experience trading securities to be sophisticated). Further, Terra explicitly warranted that it had "sufficient knowledge, experience, and professional advice to make its own evaluation of the merits and risks of a transaction of this type" (Ex. 3 at 2 (§ 4); Ex. 4 at 2 (§ 4)) and that it was "experienced in distributing structured products and understands the risks inherent in them" (Ex. 3 at 5 (§ 4.2(d)); Ex. 4 at 5 (§ 4.2(d))).

*See, e.g., Emergent Capital*, 343 F.3d at 196 (plaintiff's representation that it had "knowledge and experience in financial and business matters" sufficient to establish it as a sophisticated investor). Terra cannot escape its status and its own representations by the self-serving after-the-fact allegation that it was a "small" firm with (supposedly) "little experience with derivative instruments." (Am. Cmplt. ¶ 30.)

As a sophisticated party, Terra had "an enhanced duty to obtain available information material to investment decisions." *In re Livent*, 151 F. Supp. 2d at 439. *See also Schlaifer Nance & Co. v. Estate of Andy Warhol*, 119 F.3d 91, 98 (2d Cir. 1997). Moreover, Terra was specifically instructed to conduct its own investigation. The Presentation (the document at the heart of Plaintiffs' claims) states that:

> If and when an investment opportunity is structured, ***you must obtain and carefully read the related Offering Memorandum, which will contain the information needed to evaluate the potential investment and provide important disclosures regarding risks, fees and expenses.*** All information provided herein is qualified in its entirety by the Offering Memorandum and the related subscription agreement.

(Ex. 5 at 2 (emphasis added).) The Offering Memorandum, in turn, stated that investors "***must have the knowledge and experience in financial and business matters and the capability to conduct their own evaluation of the merits and risks of this investment***." (Ex. 6 at i (emphasis added).) Given these explicit warnings and directives, any reliance by Terra on other statements by Citi is unreasonable as a matter of law. *See, e.g., In re One Commc'ns Corp.*, 2009 WL 857535.

### 3. Terra Could Not Reasonably Have Relied on Purported Statements Contradicted by Other Disclosures

Terra – and the Municipalities (*see infra* pp. 19-22) – also cannot, as a matter of law, establish reasonable reliance on alleged statements that are contradicted by written disclosures. The gravamen of the Complaint is that Citi misrepresented the FLNs to be "safe, conservative investments" "that would generate steady interest payments." (Am. Cmplt. ¶¶ 1,

14

2.)[9]  Plaintiffs further allege that Citigroup misrepresented the effectiveness of the hedging strategy employed by the underlying TOB Fund (*id.* ¶¶ 4-6, 39-49), failed to disclose that the fund was leveraged at 9-1 (*id.* ¶¶ 8, 37, 47), and failed to disclose the assets of the TOB Fund, how Citigroup would value those assets, and the form of the swap agreements (*id.* ¶ 50).  These alleged misrepresentations and omissions cannot support a fraud claim because the nature and risks of the FLNs and the TOB Fund were fully disclosed in written documents including the Presentation, the Offering Memorandum, and the Starling Prospectuses.

For example, the Presentation, the Offering Memorandum, and the Starling Prospectuses all disclosed that "[i]nvesting in alternative investments is speculative" (Ex. 5 at 2), involves "a high degree of risk" (Ex. 6 at 41; Ex. 7 at 45; Ex. 8 at 45), is suitable only for "sophisticated and experienced investors" (Ex. 5 at 2; *see also* Ex. 6 at iii; Ex. 7 at 4; Ex. 8 at 4), and that investors may "lose all or substantially all of their investment" in the Fund.  (Ex. 5 at 21; Ex. 6 at 48; Ex. 7 at 52; Ex. 8 at 52.)  Given these warnings, Terra could not reasonably have believed that Citi had represented that the FLNs were "safe and conservative."

Terra also was not entitled to rely on the alleged representation that the TOB Fund's hedging strategy – based on the correlation between taxable and municipal nontaxable rates – provided absolute protection against loss.  (Am. Cmplt. ¶¶ 4-6, 39-49.)  The Presentation plainly disclosed that the TOB Fund "may experience substantial volatility due to dissentions in the relationship of the municipal bond investments and the hedging instruments." (Ex. 5 at 21.)  The Offering Memorandum also disclosed that "[a]dverse changes in the slope of the municipal bond yield curve as well as its relationship to the taxable yield curve, among other things, could have a material adverse effect on the [Fund's] performance"  (Ex. 6 at 42) and "the ***hedging strategies used by the [Fund] will be imperfect***," which "***could result in losses*** . . . for example,

---

[9]    The Complaint, however, never identifies where Citi actually said these things.

where the price of a debt security falls as a result of an increase in interest rates and such price loss is not offset by an increase in the related hedge position" (*id.* at 44 (emphases added)).[10]

Terra's additional assertions that Citigroup failed to disclose that the TOB Fund was leveraged 9-1 (Am. Cmplt. ¶¶ 37, 47), failed to disclose how the assets in the TOB Fund would be valued (*id.* ¶ 50), and failed to disclose the form of the swap agreements (*id.*) are likewise contradicted by written disclosures.  The Offering Memorandum notes that "[t]he target leverage of the Partnership is between 8-to-1 and 10-to-1" and that "[i]n its sole discretion, the Investment Manager may cause or permit the actual leverage of the Partnership to be outside its target leverage for short periods of time."  (Ex. 6 at 26.)  Likewise, the Presentation noted that "Target Leverage" would be "8-10x."  (Ex. 5 at 20.)  The Offering Memorandum further disclosed that "[t]he use of leverage will magnify the gains and losses experienced by the Partnership . . . ."  (Ex. 6 at 45.)  It also sets forth the exact calculation used to determine the value of the TOB Fund and investments in the TOB Fund (*id.* at 8, 34) and disclosed that the TOB Fund "will purchase a core position of highly-rated, long-term municipal bonds" that were "expected to have a weighted average maturity of approximately 20 to 30 years . . . with a minimum credit rating of AA-/Aa3" (*id.* at 22).   Additionally, Annex 3 to the Starling

---

[10]   Plaintiffs also assert that a diagram in the Presentation comparing municipal bond yields to LIBOR from 1996 to 2006 was "blatantly false and misleading." (Am. Cmplt. ¶¶ 6, 40.) The assertion is conclusory; the Complaint fails to identify a single thing in the diagram that was incorrect. Although Plaintiffs take issue with the relevance of the information presented (*id.* ¶¶ 38-46), they do not attack the accuracy of the data.  Nor do they dispute that there was, in fact, a strong correlation historically between long-term municipal bond rates and LIBOR.  Plaintiffs' opinion, in hindsight, that *different* data or *different* benchmarks (*id.* ¶¶ 41-45) would have been more useful does not plead an actionable misstatement.  *See In re Optionable Sec. Litig.*, 577 F. Supp. 2d 681, 692 (S.D.N.Y. 2008) (disclosure is not required "'merely because a reasonable investor would very much like to know that fact'" (quoting *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 267 (2d Cir. 1993))); *In re The Warnaco Group, Inc. Sec. Litig.*, 388 F. Supp. 2d 307, 315-16 (S.D.N.Y. 2005) (dismissing securities claim where plaintiffs' allegations did not show how the undisclosed information "render[ed] any of [defendant's] prior statements false").  Whatever the merits of Plaintiffs' opinion, it does not transform the truthful presentation of accurate data into a misstatement.

Prospectuses provides a detailed description of the swap agreement (Ex. 7 at 26-29; Ex. 8 at 26-29) and Annex 4 provides a form swap confirmation (Ex. 7 at 30-35; Ex. 8 at 30-35).

Terra cannot reasonably rely on alleged misrepresentations where, as here, "basic inquiries would have revealed the truth." *See In re Livent*, 151 F. Supp. 2d at 439. "If plaintiff has the means of knowing, by the exercise of ordinary diligence, the truth, or real quality of the subject of the representation, he must make use of those means, or he will not be heard to complain that he was induced to enter into the transaction by misrepresentations." *Id.* (internal quotation and citation omitted). *See also Starr ex rel. Estate of Sampson v. Georgeson Shareholder, Inc.*, 412 F.3d 103, 109 (2d Cir. 2005) ("'An investor may not justifiably rely on a misrepresentation if, through minimal diligence, the investor should have discovered the truth.'" (quoting, *Brown*, 991 F.2d at 1032)); *Ashland Inc. v. Morgan Stanley & Co.*, No. 09 CV 5415, -- F. Supp. 2d. --, 2010 WL 1253932, at *14 (S.D.N.Y. Mar. 30, 2010) (finding it unreasonable for a sophisticated entity considering the investment of tens of millions of dollars to rely on highly general statements and not to have insisted upon receiving the prospectus and terms of purchase.)

## C.     Terra Fails to Plead Loss Causation

Terra does not allege that it has suffered any investment loss.[11]   Rather, it went out of business as a result of its own misconduct.  As the Complaint concedes, "*[a]s a result of the Municipalities' losses*, Norway's Financial Supervisory Agency launched an investigation of

---

[11]   The FLNs are held by the Municipalities and all loss in value of the securities was borne by them.  Even if Terra were deemed to have purchased the FLNs and then sold them to the Municipalities, the Complaint does not allege that Terra made a loss on the sale.  *See Dura*, 544 U.S. at 342 (plaintiff who sells securities before the alleged misrepresentation is revealed has suffered no damages); *see also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 40-41 (2d Cir. 2009) (in-and-out traders in class action who purchased their shares at an inflated price, but sold them prior to the corrective disclosures, could not prove loss causation); *Arduini/Messina P'ship v. Nat'l Med. Fin. Servs.*, 74 F. Supp. 2d 352, 361-62 (S.D.N.Y. 1999) (dismissing complaint because plaintiffs sold their stock several months prior to defendants' disclosure of the alleged fraud).

Terra. *As a result of that investigation*, **Terra ceased operations and was forced into bankruptcy**, leading to the loss of Terra's considerable enterprise value . . . ."  (Am. Cmplt. ¶ 82 (emphasis added); *see also id.* ¶ 12.)

This is not sufficient.  To adequately allege loss causation, a plaintiff must plead a direct causal connection between the alleged fraud and the losses claimed.  *See Dura*, 544 U.S. at 346-47; *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 173 (2d Cir. 2005) (holding that plaintiff's economic loss must be both "foreseeable" and "caused by the materialization of the concealed risk"); *Ashcroft*, 129 S. Ct. at 1949 (allegations must, at a minimum, be "plausible").  Here, by its own admission, Terra's bankruptcy is the direct result of actions taken by the FSA – namely, the revocation of Terra's licenses after a finding that it had engaged in "serious and systematic" violations of Norwegian securities laws, including failure to provide the Municipalities with the risk disclosures that Citi had made to Terra.  (Ex. 2 at 6.)

The requirement that a plaintiff adequately allege and prove loss causation in securities fraud cases reflects the law's recognition that economic loss can be the product of a "tangle of factors," *Dura*, 544 U.S. at 343, which may – or may *not* – include the defendants' alleged misconduct.   Here, Terra makes no effort to disentangle the purported misrepresentations by Citi from the FSA investigation, the revocation of Terra's licenses, Terra's violation of Norwegian securities laws, or the worldwide financial crisis, as causes of its bankruptcy.  Terra has not and cannot allege "facts sufficient to support an inference that it was defendant's fraud – rather than other salient factors – that proximately caused plaintiff's loss." *Lentell*, 396 F.3d at 177; *see also Healthcare Fin. Group, Inc. v. Bank Leumi USA*, 669 F. Supp. 2d 344, 339 (S.D.N.Y. 2009) (Marrero, J.) (dismissing securities fraud claim because plaintiff failed to allege that the "*subject* of the fraudulent statement or omission was the cause of the actual loss suffered" (quoting *Lentell*, 396 F.3d at 173)).  Because Terra has not pleaded a

cognizable loss causally connected to the alleged fraud, its securities fraud claim should be dismissed.

**II.**
**<u>THE MUNICIPALITIES FAIL TO STATE A CLAIM FOR SECURITIES FRAUD</u>**

**A.     The Municipalities Fail to Plead Reasonable Reliance with Particularity**

As discussed above, reasonable reliance is an essential element of a Rule 10b-5 fraud claim that must be pleaded with particularity.  *See supra* p. 10.  Because Plaintiffs cannot avail themselves of the "fraud on the market" presumption,[12] they must plead direct reliance on the alleged misstatements – including "where, when and *to whom* the statements were made." *Fadem v. Ford Motor Co.*, 352 F. Supp. 2d 501, 505 (S.D.N.Y. 2005) (internal quotation marks omitted) (emphasis added); *see also Defer LP v. Raymond James Fin., Inc.*, 654 F. Supp. 2d 204, 213-14 (S.D.N.Y. 2009) (dismissing complaint for failure to detail the circumstances in which each alleged statement was made, including when the statements were made and to whom).

Here, Plaintiffs do not allege any direct communication between the Municipalities and any defendant, much less details about which of the seven municipalities received and relied upon each alleged misstatement.  Nor does the Complaint identify a single person associated with any of the Municipalities who is alleged to have read and relied on Citi's allegedly false statements.

Instead, the Complaint alleges that "the Municipalities *either* relied directly on the misrepresentations and omissions of CGM New York and CAI, *or* relied on the advice of Terra, their broker and agent." (Am. Cmplt. ¶¶ 102, 113, 119 (emphases added); *accord id.*

---

[12]   Under that presumption, plaintiffs who purchased their securities on a public securities exchange do not have to plead direct reliance because the price of a security in an efficient market is presumed to reflect all relevant public information about the security. *Basic Inc. v. Levinson*, 485 U.S. 224, 248 (1988).  The securities here were purchased in a private transaction, not on an exchange.

¶ 31.)   On its face, the allegation that the Municipalities may have *or may not have* relied directly on statements by Defendants fails to plead the element of reliance.   The alternative offered by the Municipalities – that they relied on unspecified "advice" from their co-plaintiff – is, by definition, antithetical to direct reliance on a statement made by a defendant.   Having engaged a securities firm to act on their behalf – a firm that disclaimed reliance on Citi and warranted that it had sufficient knowledge and experience to evaluate independently the merits and risks of the transaction – the Municipalities were plainly relying on Terra's advice, not Citi's representations, in evaluating the investment.[13]

Moreover, the Complaint only refers to the Municipalities collectively, notwithstanding the fact that they are seven different entities governed by separate local authorities.  (Ex. 10.)  Defendants' alleged misstatements are also treated collectively.  Plaintiffs make no attempt to identify specific statements communicated by a specific defendant to a specific plaintiff.   Because the Complaint is utterly lacking in particularized fact allegations about who, what, when, where and how each municipality came to rely on any alleged misstatement, the securities fraud claim by the Municipalities should be dismissed for failure to satisfy the heightened pleading standards of the PSLRA and Rule 9(b).  *See Doehla v. Wathne Ltd.*, No. 98 Civ. 6087, 1999 WL 566311, at *17 (S.D.N.Y. Aug. 3, 1999) (dismissing complaint for failure to plead "where, when and *to whom* the statements were made" (emphasis added)).

In this regard, it bears emphasis that the missing information is uniquely in the possession of the Plaintiffs and that Defendants pointed out the same deficiency with respect to Plaintiffs' original complaint.  (Ex. 11 at 12.)  If there were an actual person associated with one

---

[13]   The FSA found that, because Terra had served as the Municipalities' investment advisor for many years, a "relationship of trust" had developed and it was "natural" for the Municipalities to "rely solely" on information and advice from Terra, and not to seek additional advice from others.  (Ex. 2 at 5.)

of the Municipalities who read and relied on Citi's alleged misrepresentations to purchase the FLNs, it would be a simple matter to identify such a person.  The fact that Plaintiffs' Amended Complaint remains silent on the issue strongly suggests that no such person exists, and therefore, there was no reliance at all.

**B.      The Municipalities Could Not Reasonably Have Relied on Purported Statements Contradicted by Other Disclosures**

As discussed above, *see supra* pp. 14-17, Plaintiffs cannot reasonably rely on alleged misrepresentations that are contradicted by express written disclosures.  Although the Municipalities claim not to have received all of the relevant written documentation, it is well-established that "when an agent is employed to represent a principal with respect to a given matter and acquires knowledge material to that representation, for purposes of assessing the principal's rights and liabilities vis-à-vis a third person the agent's knowledge is imputed to the principal."  *Veal v. Geraci*, 23 F.3d 722, 725 (2d Cir. 1994); *see In re Parmalat Sec. Litig.*, 659 F. Supp. 2d 504, 518-19 (S.D.N.Y. 2009).   Accordingly, materials provided to, or made available to, Terra are deemed to have been provided to, or made available to, the Municipalities.

In any event, the Municipalities concede that they received the Presentation (*see* Am. Cmplt. ¶ 31), a document that contains numerous risk disclosures and directed potential investors to the Offering Memorandum for complete disclosures and information.  (Ex. 5 at 2, 21-22.)  The Municipalities' self-proclaimed lack of financial sophistication, or blind reliance upon their investment advisor, does not relieve them of the common sense obligation to review investment materials.  *See Brown v. E.F. Hutton Group*, 735 F. Supp. 1196, 1202 (S.D.N.Y. 1990) ("[A]ll investors, no matter how 'unsophisticated', would know or at least suspect that there would be risks associated with an oil and gas investment at that time."); *see also Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir. 1986) (rejecting Section 10(b) claim because the offering

memorandum made clear that projections were necessarily speculative in nature); *Feinman v. Schulman Berlin & Davis*, 677 F. Supp. 168, 170 (S.D.N.Y. 1988) ("Reliance on statements which are directly contradicted by the clear language of the offering memorandum . . . cannot be a basis for a federal securities fraud claim.").

### C.     The Municipalities Fail to Plead Loss Causation

Finally, the Municipalities' securities law claims should also be dismissed for failure to plead loss causation.  As discussed above, Plaintiffs must allege an injury that was proximately caused by the alleged misconduct – namely, the alleged misrepresentation or omission.  *See supra* pp. 17-19.  Where, as here, the alleged "loss coincides with a market wide phenomenon causing comparable losses to other investors, the prospect that the plaintiff's loss was caused by the fraud decreases and a plaintiff's claim fails when it has not adequately [pleaded] facts which, if proven, would show that its loss was caused by the alleged [misconduct] as opposed to intervening events."  *Lentell*, 396 F.3d at 174 (internal quotation marks omitted); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, No. 02 Civ. 9690, 2008 WL 2324111, at *7 (S.D.N.Y. June 4, 2008) ("Although plaintiffs need not quantify the fraud-related loss, they must ascribe some rough proportion of the whole loss to [the alleged] misstatements." (internal quotation marks omitted) (alteration in original)).

Plaintiffs do not distinguish the losses in the TOB Fund and the decline in the value of the FLNs from the broader market decline and the bearish investment climate. Beginning in late summer and early fall of 2007, a credit crisis unfolded that is widely recognized to be the worst financial crisis since the Great Depression and was described by the U.S. Secretary of the Treasury as "a financial crisis more severe and unpredictable than any in our lifetimes." Henry M. Paulson Jr., Op-Ed., *Fighting the Financial Crisis, One Challenge at a Time,* N.Y. Times, Nov. 18, 2008, at A27.  The S&P 500 Index fell by 42% from the beginning of October 2007 to January 2009.  LIBOR interest rates fell 60% in the same period. Plaintiffs

themselves concede that the TOB Fund's strategy broke down as a result of the unprecedented global financial crisis and the resulting investor flight to more conservative investments.  (*See* Am. Cmplt. ¶ 73.)  Because the Municipalities make no effort to account for losses caused by the financial crisis, they fail plausibly to allege that their investment losses were caused by Citi's alleged misrepresentations or omissions.  *See In re Merrill*, 2008 WL 2324111, at *8 (finding pleadings insufficient because "there are no allegations to show that the steep decline [in stock price] was caused by the alleged fraud, rather than by the collapse of the market for Internet-based securities"); *Healthcare Fin. Group*, 669 F. Supp. 2d at 350 (dismissing 10b-5 claim because plaintiffs did not plausibly allege that the collapse of the auction rate securities market was caused by the revelation of information allegedly misrepresented or suppressed); *D.E.&J Ltd. v. Conaway*, 284 F. Supp. 2d 719, 749 n.26 (E.D. Mich. 2003) (finding failure to plead loss causation where "the stock market, in general, was in a period of decline during this period" because of events relating to September 11, 2001, recession and the war in Afghanistan).

Moreover, to the extent the investment losses were caused by anything other than the general credit market collapse, the suggestion that Terra's wrongful conduct had no impact on the Municipalities' loss is simply implausible.  After all, the FSA stripped Terra of its license to sell securities after finding that Terra provided "lacking and misleading" information to the Municipalities, and omitted to pass along critical disclosures, ***about this very transaction***.  (Ex. 2 at 4.)  The Municipalities' failure to disentangle losses attributable to the wrongful conduct of Terra from any ill effects allegedly caused by Citi's representations is fatal to its claim.  *See In re Sec. Capital Assurance, Ltd. Sec. Litig.*, 07 Civ. 11086, 2010 WL 1372688, *29-*32 (S.D.N.Y. Mar. 31, 2010) (dismissing 10b-5 claim because plaintiffs failed to isolate the impact of alleged misrepresentations from the effects of intervening events, including the housing market crisis and actions by third parties).

## III.
## PLAINTIFFS' REMAINING CLAIMS SHOULD ALSO BE DISMISSED

**A.      Control Person Liability**

Plaintiffs also assert claims against Citigroup Inc. for "control-person" liability under Section 20(a) of the 1934 Act, alleging that Citigroup Inc. "as the sole ultimate shareholder of CGM New York and CAI" possessed the power to control and direct the management and policies of CGM New York and CAI in the perpetration of the alleged fraud. (Am. Cmplt. ¶¶ 105-109.)  To state a claim under this section, a plaintiff must adequately allege (i) a primary violation, (ii) control of the primary violator by the control person and (iii) that the controlling person was in some meaningful sense a culpable participant in the alleged fraud perpetrated by the controlled person.  *See ATSI Commc'ns*, 493 F.3d at 108; *see also* 15 U.S.C. § 78t(a).  Because Plaintiffs fail adequately to plead a primary violation of the securities laws, their control-person claim also should be dismissed.  *See Medis Investor Group v. Medis Techs. Ltd.*, 586 F. Supp. 2d 136, 148 (S.D.N.Y. 2008) (dismissing control person liability claim upon finding no primary violation).

**B.      Fraud and Fraudulent Inducement**

The requirements for common law fraud and fraudulent inducement are essentially identical to those for pleading a violation of Rule 10b-5.   *See Ashland*, 2010 WL 1253932, at *15.  Thus, Plaintiffs' fraud and fraudulent inducement claims fail for the same reasons discussed above with respect to their Rule 10b-5 claim.  *Id.* (dismissing common law fraud claims where plaintiff failed to satisfy the requirements of 10b-5 claim).

**C.      Negligent Misrepresentation**

Assuming Plaintiffs' claim for negligent misrepresentation arises under New York law, this claim is preempted by New York's Martin Act, which grants the New York Attorney General exclusive authority to prosecute securities claims in this State and precludes the assertion of non-fraud, common law tort claims in the securities context.  *See Castellano v.*

*Young & Rubicam, Inc.*, 257 F.3d 171, 190 (2d Cir. 2001); *Stephenson v. CITCO Group Ltd.,* 09 CV 00716, 2010 WL 1244007, at \*10-\*13 (S.D.N.Y. Apr. 1, 2010); *Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*, 651 F. Supp. 2d 155, 172 (S.D.N.Y. 2009).  Because Plaintiffs allege that all or most of the relevant events occurred from or within New York (*see, e.g.*, ¶¶ 31, 89-95), this claim should be dismissed.  *Abu Dhabi Commercial Bank*, 651 F. Supp. 2d at 172; *see also Ashland*, 2010 WL 1253932, at \*16-\*17 (finding state law claims including claim for negligent misrepresentation preempted by the Martin Act).

Additionally, a claim for negligent misrepresentation shares certain elements of a 10b-5 claim, including reasonable reliance and a cognizable loss.  *See Healthcare Fin. Group*, 669 F. Supp. 2d at 349 (citing elements of negligent misrepresentation claim under New York law). As discussed, Plaintiffs fail adequately to plead reasonable reliance or loss attributable to the alleged misrepresentation.  Accordingly, their claim for negligent misrepresentation should also be dismissed.  *See Harsco Corp. v. Segui*, 91 F.3d 337, 342, 348 (2d Cir. 1996).

## <u>CONCLUSION</u>

For the reasons set forth above, the Court should dismiss the Amended Complaint in its entirety.  Because Plaintiffs already have been given an opportunity to cure the identified defects, all of their claims should be dismissed with prejudice.

Dated: April 15, 2010          Respectfully submitted,
     New York, New York

                               _____/s/ John F. Baughman_____
                               Brad S. Karp (bkarp@paulweiss.com)
                               John F. Baughman (jbaughman@paulweiss.com)
                               Susanna M. Buergel (sbuergel@paulweiss.com)

                               PAUL, WEISS, RIFKIND, WHARTON &
                                GARRISON LLP
                               1285 Avenue of the Americas
                               New York, New York 10019-6064
                               Tel.  (212) 373-3000

                               *Attorneys for Citigroup Inc., Citigroup Global Markets Inc., and Citigroup Alternative Investments LLC*